**SPECTRONICS CORPORATION,**
**Plaintiff–Appellant,**

v.

**H.B. FULLER COMPANY, INC., and**
**H.B. Fuller Automotive Products,**
**Inc., Defendants–Appellees.**

**No. 91–1041.**

United States Court of Appeals,
Federal Circuit.

July 29, 1991.

Arthur H. Seidel, Seidel, Gonda, Lavorgna and Monaco, P.C., of Philadelphia, Pa., argued for plaintiff-appellant. With him on the brief were Per–Otto L. Erichsen and Paul S. Chirgott.

Mark D. Schuman, Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., Minneapolis, Minn., argued for defendants-appellees. With him on the brief was Alan G. Carlson.

Before MICHEL and CLEVENGER, Circuit Judges, and BENNETT, Senior Circuit Judge.

CLEVENGER, Circuit Judge.

Spectronics Corporation (Spectronics) appeals the judgment of the United States District Court for the Eastern District of New York dismissing its action under the Declaratory Judgment Act, 28 U.S.C. § 2201 (1988), against H.B. Fuller Company, Inc., and H.B. Fuller Automotive Products, Inc., (collectively Fuller), for lack of an actual controversy. We affirm.

I

Spectronics manufactures and sells DY-GLO–12, a fluorescent leak detection additive used in automotive air conditioning systems. United States Patent No. 4,758,-366 (the '366 patent), assigned to Fuller, claims certain fluorescent dyes used to detect leaks in air conditioning and refrigeration systems. Fuller sent letters to the industry in 1988 announcing the addition of the '366 patent to its growing family of patents and its developing "patent strategy" with respect to its tracer dye line of products. The letters did not refer to Spectronics' DYGLO–12 or any other competing products. Spectronics filed suit alleging that "an actual controversy exists" as to

whether it was infringing the '366 patent claims, and that the purpose of Fuller's letters to the industry "was to intimidate both [Spectronics] and [Spectronics'] customers in that anyone making, using or selling 'DYGLO–12' would be liable for such activities under [the '366 patent]."

In its complaint, Spectronics asserted three causes of action: (1) entitlement to a declaratory judgment of invalidity or non-infringement of the claims of the '366 patent under the Declaratory Judgment Act, 28 U.S.C. § 2201 (1988); (2) federal antitrust violations under the Sherman Act, 15 U.S.C. § 2 (1988); and (3) tortious interference with business relations. Before filing its answer, Fuller moved to dismiss all three counts under Fed.R.Civ.P. 12. Fuller's motion was granted in part insofar as the parties stipulated to dismissal without prejudice of the antitrust and tortious interference counts, leaving at issue only the declaratory judgment count. Fuller then answered, filing a contingent counterclaim of patent infringement, and thereafter filed a second motion to dismiss the declaratory judgment action for lack of an actual controversy. During a hearing on that motion, Fuller presented the District Court with a declaration that the '366 patent had been submitted to the Patent and Trademark Office (PTO) for reissue. The District Court denied the second motion.

Eight days later, Fuller filed in the District Court a covenant not to sue Spectronics for infringement of the '366 patent claims. The covenant, styled a "Statement of Non Liability," provides:

Defendant, H.B. Fuller Company, Inc., has filed a reissue application to reissue U.S. Patent No. 4,758,366 cancelling claims 1–18 and seeking new claims.

Spectronics has no liability to Defendants or any successors-in-interest to U.S. Patent No. 4,758,366 for infringement of claims 1–18 of U.S. Patent No. 4,758,366, and Defendants and any successors-in-interest to U.S. Patent No. 4,758,366 will not sue Spectronics for infringement of claims 1–18 of U.S. Patent No. 4,758,366.

Fuller filed a third motion to dismiss for lack of an actual controversy, which was granted in a memorandum opinion and order that incorporated "the [District] Court's extensive discussions with counsel on the record at oral argument on August 17, 1990," as permitted by Fed.R.Civ.P. 52(a). *Spectronics Corp v. H.B. Fuller Co.*, CV 88–3803, slip op. at 1 (E.D.N.Y. Aug. 17, 1990) (incorporated oral argument and colloquy hereinafter cited as "Hearing Transcript"). In granting the third motion to dismiss, the District Court explained that:

[a]lthough this Court found on two previous occasions that a case or controversy existed in that plaintiff had shown the existence of facts underlying a "reasonable apprehension" that it would be sued for infringement of [the '366 patent claims], defendants' June 5, 1990 filing with the Patent and Trademark Office of a Reissue Application for this patent, taken in concert with its June 15, 1990, filing with this Court of a "Statement of Non–Liability," operate to divest this Court of jurisdiction over this matter. Although plaintiff Spectronics Corporation may be charged with infringement of the claims that may result from the reissue application, plaintiff cannot, on the record before this Court, demonstrate an objectively reasonable apprehension that it will face an infringement suit on the '366 patent.

*Id.*

## II

The Declaratory Judgment Act provides, in pertinent part:

*In a case of actual controversy* within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a) (1988) (emphasis added).

The existence of an actual controversy is an absolute predicate for declara-

tory judgment jurisdiction. *Grain Processing Corp. v. American Maize–Products Co.,* 840 F.2d 902, 905, 5 USPQ2d 1788, 1791 (Fed.Cir.1988). When there is no actual controversy, the court has no discretion to decide the case. When there is an actual controversy and thus jurisdiction, the exercise of that jurisdiction is discretionary. *Public Serv. Comm'n v. Wycoff Co.,* 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952); *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 735 n. 6, 6 USPQ2d 1685, 1688 n. 6 (Fed.Cir.1988). Dismissal in this case was not based on a discretionary decision not to exercise jurisdiction, but was compelled by the District Court's conclusion that an actual controversy, and therefore jurisdiction, was altogether lacking.

■ Spectronics disputes none of the facts in the record, but argues the legal proposition that those facts established an actual controversy under the patent laws. In these circumstances, we review dismissal as a matter of law, keeping in mind that the District Court's "view of the legal effect of the fact pattern before it is not to be lightly disregarded." *Arrowhead,* 846 F.2d at 735, 6 USPQ2d at 1688.

■ The long established rule of law is that a declaratory judgment plaintiff must establish an actual controversy on the "totality of the circumstances." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 272, 61 S.Ct. 510, 511, 85 L.Ed. 826 (1941); *International Medical Prosthetics Research Assocs. v. Gore Enter. Holdings, Inc.,* 787 F.2d 572, 575, 229 USPQ 278, 280 (Fed.Cir.1986); *C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874, 880, 219 USPQ 197, 203 (Fed.Cir.1983). In cases involving a declaratory judgment of patent non-infringement or invalidity, the test for determining whether an actual controversy exists is two-pronged. First, the accused infringer must have actually produced or prepared to produce an allegedly infringing product. *Jervis B. Webb Co. v. Southern*

*Sys., Inc.,* 742 F.2d 1388, 1398–99, 222 USPQ 943, 949 (Fed.Cir.1984). The first prong "looks to the accused infringer's conduct and ensures that the controversy is sufficiently real and substantial." *Lang v. Pacific Marine and Supply Co.,* 895 F.2d 761, 764, 13 USPQ2d 1820, 1822 (Fed.Cir. 1990) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 *reh'g denied,* 300 U.S. 687, 57 S.Ct. 667, 81 L.Ed. 889 (1937)). Second, the patent holder's conduct must create an objectively reasonable apprehension on the part of the accused infringer that the patent holder will initiate suit if the allegedly infringing activity continues. *Arrowhead,* 846 F.2d at 736, 6 USPQ2d at 1689; *Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953, 955, 3 USPQ2d 1310, 1311 (Fed.Cir.1987); *Indium Corp. v. Semi–Alloys, Inc.,* 781 F.2d 879, 228 USPQ 845 (Fed.Cir.1985), *cert. denied,* 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986).

On appeal, Spectronics assigns error to the District Court's conclusion that Spectronics did not demonstrate an objectively reasonable apprehension of suit, asserting first that such apprehension should be measured at the time of filing of its complaint, and second, that the potential grant of a reissue patent manifestly places Spectronics at risk of further litigation on the subject matter contained in the specification of the '366 patent.

### III

■ We first address the contention that dismissal was improper because declaratory judgment jurisdiction must be determined solely on the facts as they existed at the time the complaint was filed. Spectronics relies on *Arrowhead,* 846 F.2d at 734, 6 USPQ2d at 1687, which addresses the well-established rule that a party seeking a declaratory judgment must plead facts *initially* sufficient to establish the existence of an actual controversy.[1] In *Arrowhead,*

---

**1.** *See also International Medical,* 787 F.2d at 576 n. 8, 229 USPQ at 281 n. 8 ("[t]he basis for jurisdiction, i.e., facts showing a justiciable controversy, and notice of the case to be tried, should be found in the complaint"). *Cf. Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941) (complaint must demonstrate that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between

a declaratory judgment plaintiff argued that a letter sent after the complaint was filed supported jurisdiction even if the original pleaded facts did not. This Court stated that "[t]he presence or absence of jurisdiction must be determined on the facts existing at the time the complaint under consideration was filed." *Arrowhead,* 846 F.2d at 734 n. 2, 6 USPQ2d at 1687 n. 2.

We agree wholeheartedly that in personam and subject matter jurisdictional facts must be pleaded, and proved when challenged, and that later events may not create jurisdiction where none existed at the time of filing. Thus, well-pleaded jurisdictional facts, such as diversity of citizenship, cannot be ousted by subsequent events. *Mollan v. Torrance,* 6 U.S. (1 Wheat.) 172, 173 (1824) (changed residence of a party did not defeat jurisdiction because "the jurisdiction of the court depends upon the state of things at the time of the action brought, and [ ] after vesting, it cannot be ousted by subsequent events"). Although Spectronics correctly states the rule of law requiring that such jurisdictional facts sufficient to support declaratory judgment jurisdiction be alleged in the well-pleaded complaint, application of that rule does not conclude the inquiry, since facts sufficient to vest jurisdiction initially may remain immutable where no justiciable controversy survives.

"Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case." *Amstar Corp. v. Envirotech Corp.,* 823 F.2d 1538, 1549, 3 USPQ2d 1412, 1420 (Fed.Cir.1987) (quoting *Burke v. Barnes,* 479 U.S. 361, 363, 107 S.Ct. 734, 736, 93 L.Ed.2d 732 (1987)). Moreover, "[a]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975) (quoting *Steffel v.*

parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment").

2. *See also Jervis B. Webb Co. v. Southern Sys., Inc.,* 742 F.2d 1388, 1398 n. 6, 222 USPQ 943, 949 n. 6 (Fed.Cir.1984); *Grain Processing Corp.*

*Thompson,* 415 U.S. 452, 459, n. 10, 94 S.Ct. 1209, 1216, n. 10, 39 L.Ed.2d 505 (1974)).[2] The Declaratory Judgment Act, "in its limitation to 'cases of actual controversy,' manifestly has regard to the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–40, 57 S.Ct. 461, 463, 81 L.Ed. 617, *reh'g denied,* 300 U.S. 687, 57 S.Ct. 667, 81 L.Ed. 889 (1937). Thus, declaratory judgment jurisdiction at any stage of litigation is limited to "the determination of controversies to which under the Constitution the judicial power extends." *Id.* at 240, 57 S.Ct. at 464.

Mootness is "one of the doctrines that clusters about Article III, to define further the case-or-controversy requirement that limits the federal judicial power in our system of government." *McKinney v. U.S. Dep't of Treasury,* 799 F.2d 1544, 1549, 4 Fed.Cir. (T) 103, 106 (1986) (citation omitted); *see North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971) (mootness is a jurisdictional question because federal courts are " 'not empowered to decide moot questions or abstract propositions' ") (citation omitted)); *see also United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950).

The exercise of judicial power under Article III depends at all times on the existence of a case or controversy. The burden is on Spectronics "to establish that jurisdiction over its declaratory judgment action existed at, *and has continued since,* the time the complaint was filed." *International Medical,* 787 F.2d at 575, 229 USPQ at 281 (emphasis added); *see also Grain Processing,* 840 F.2d at 904, 5 USPQ2d at 1791 (no actual controversy existed to support declaratory judgment with respect to certain patent claims, where patent holder aban-

*v. American Maize–Products Co.,* 840 F.2d 902, 905–906, 5 USPQ2d 1788, 1791 (Fed.Cir.1988) (quoting *Preiser v. Newkirk, supra,* for proposition that actual controversy must be extant at all stages of review in declaratory judgment action involving patent).

doned allegation of infringement of those claims prior to trial and there was no threat of future suit). Thus, the District Court properly considered post-filing events in its evaluation of continuing jurisdiction.

## IV

■ We must therefore consider whether the District Court was wrong in concluding that post-filing events rendered moot the controversy in the instant action. Neither party disputes that, under ordinary circumstances, Spectronics' production of DYGLO–12 would potentially infringe the claims of the '366 patent. However, with admirable candor, counsel for Spectronics stated his opinion that in view of the statement of non liability, the '366 patent claims could never be enforced against Spectronics. Hearing Transcript at 11–12. We agree that, in view of the statement of non liability, Fuller is forever estopped from asserting the '366 patent claims against Spectronics. Having requested a declaration of non-infringement of the '366 patent claims, Spectronics for all practical purposes has won the case pleaded in its complaint.

Spectronics contends, however, that the potential grant of a reissue patent manifestly places it at risk of further litigation on the subject matter contained in the specification of the '366 patent, which Spectronics believes will reappear in the claims of the reissue patent and form the basis for threatened or actual litigation against it. Spectronics refers us to a letter it received from Fuller's counsel, which accompanied the statement of non liability. That letter reiterated that "Fuller has clearly and unequivocally stated that there is no liability by Spectronics for infringement of the claims that are presently in the patent," but also indicated that "[i]f new claims emerge from the reissue [proceeding], and if there is an issue of infringement by Spectronics, and if there is subsequent litigation," Spectronics would be free to raise a specified defense. Thus, argues Spectronics, while the reissue application is pending before the PTO, "the '366 patent is

merely in limbo, and may be resurrected at some future time, albeit in reduced form."

There is, however, no guarantee that the reissue patent will eventually issue. 37 C.F.R. § 1.178 (1990) ("[i]f a reissue be refused, the original patent will be returned to applicant upon his request"); *see State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236, 224 USPQ 418, 425 (Fed. Cir.1985) (ultimate fate and legal effect of pending patent application is inherently uncertain). Furthermore, even if Spectronics had an objectively reasonable apprehension about a future suit based upon the reissue patent, we would be compelled to affirm the District Court's dismissal because Spectronics can not demonstrate that its present activity is potentially infringing of any patent claims, since it is immune to suit under the claims of the '366 patent, and no reissue patent claims yet exist by which infringement *vel non* can be measured.

There are sensible reasons why the existence of issued patent claims, presently enforceable against Spectronics, are a requisite to litigation of a declaratory judgment action. The claims of the patent are the subject matter of the suit; they are sought to be declared invalid or non-infringed. The allegedly infringing product is to be measured against the claims set forth in the patent. *Jervis B. Webb Co.*, 742 F.2d at 1399, 222 USPQ at 949 (the existence of an actual controversy must be evaluated by a claim-by-claim analysis of the patent). Spectronics is required to demonstrate that it is engaged in potentially infringing conduct, such that it "has a true interest to be protected by the declaratory judgment." *Arrowhead*, 846 F.2d at 736, 6 USPQ2d at 1689; *see Lang*, 895 F.2d at 764, 13 USPQ2d at 1822 (potential infringer in declaratory judgment action must be "engaged in an activity directed toward making, selling, or using subject to an infringement charge under 35 U.S.C. § 271(a)"). Before a patent issues, and during the pendency of a patent application in the PTO, the courts have no claims by which to gauge an alleged infringer's conduct.

Before issuance, what the scope of claims will be "is something totally unforeseeable." *State Indus.*, 751 F.2d at 1236, 224 USPQ at 425. The lack of any certainty as to the content of claims in the reissue patent was clearly understood in the District Court:

> THE COURT: So what you're saying ... is that there will come a day almost assuredly as—what's the expression— God makes green apples, or something like that—that we will be fighting over a patent and the series of claims. What those claims are, however, we don't yet know, do we?
>
> COUNSEL FOR SPECTRONICS: That is correct.
>
> THE COURT: We have a pretty good idea but we don't know the precise dimension of what this controversy will eventually evolve into. Correct?
>
> COUNSEL FOR SPECTRONICS: That is correct.

Hearing Transcript at 15.

Spectronics also contends that the reissue application supports jurisdiction because any claims that reissue will be "a vestige of" the '366 patent claims. Under 35 U.S.C. § 252 (1988)[3] and our case law, when original claims are reissued without substantive change, they are generally enforceable from the date the original patent was granted. *Kaufman Co. v. Lantech Inc.*, 807 F.2d 970, 976, 1 USPQ2d 1202, 1206–07 (Fed.Cir.1986); *Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 827, 221 USPQ 568, 574–75 (Fed. Cir.1984). New or amended claims are enforceable only from the date of reissue, and, as stated by Pasquale J. Federico, "[t]he specific things made before the date

of the reissue, which infringe the new reissue claims, are absolutely free of the reissued patent and may be used or sold after the date of reissue without regard to the patent." P.J. Federico, Commentary on the New Patent Act, 35 U.S.C.A. 1, 46 (1954).

Beneath Spectronics' contention appears to lie the argument that it could be held liable for its current allegedly infringing activity if any of the reissue claims are "identical" to the original claims within the meaning of § 252. However, § 252 also provides that identical reissue claims "shall constitute a continuation" of the original claims, and that surrender of the original claims upon reissuance of identical claims "shall not affect any action then pending nor abate any cause of action then existing." In the instant case, Fuller asserted in the statement of non liability that Spectronics "has no liability to [Fuller] for infringement of claims 1–18 of [the '366 patent]," and unequivocally reiterated in its letter accompanying the statement that "there is no liability by Spectronics for infringement" of those claims. In addition, Fuller "released Spectronics from any liability with respect to the claims of the '366 patent. This includes past products, current products or products contemplated in the future. Because Spectronics has been absolved from liability on all the claims of the '366 patent, there will be no future confrontation with respect to them." Brief for Appellees at 28, *Spectronics Corp. v. H.B. Fuller Co.*, No. 91–1041 (Fed.Cir. filed Feb. 7, 1991).

Although Spectronics may have some cause to fear a suit for future infringement of substantively non-identical claims after

---

**3.** Section 252 provides, in pertinent part:

The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are identical with

the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

No reissued patent shall abridge or affect the right of any person or his successors in business who made, purchased or used prior to the grant of a reissue anything patented by the reissued patent, to continue the use of, or to sell to others to be used or sold, the specific thing so made, purchased or used, unless the making, using or selling of such thing infringes a valid claim of the reissued patent which was in the original patent.

reissue, it has no cause for concern that it can be held liable for practicing the invention claimed in the '366 patent. As to that invention, Fuller is estopped by its statement of non liability, on its face and as explained by Fuller, from asserting liability for the making, selling or using of any Spectronics' product that would infringe the claims of the '366 patent.

### V

In sum, the District Court did not err in concluding that post-filing events rendered moot the controversy in this case. To proceed would "involve the court in rendering a forbidden advisory opinion." *Arrowhead*, 846 F.2d at 735, 6 USPQ2d at 1688.

Having duly considered and rejected Spectronics' other arguments on appeal, we affirm the judgment of the District Court granting Fuller's motion to dismiss for lack of jurisdiction.

AFFIRMED.