**INTERDIGITAL TECHNOLOGY CORP.**

v.

**OKI AMERICA, INC. and Qualcomm Inc.**

**Civ. A. No. 93–2004.**

United States District Court,
E.D. Pennsylvania.

Feb. 16, 1994.

John T. Kotelly, Washington, DC, for Interdigital Technology Corp.

Jerry B. Blackstock, Atlanta, GA, for OKI America, Inc.

Daniel Johnson, Jr., San Diego, CA for Qualcomm Inc.

## *MEMORANDUM*

BARTLE, District Judge.

Plaintiff, Interdigital Technology Corporation ("ITC"), is the owner of various United States patents relating to digital wireless telephone systems and equipment. On April 16, 1993, plaintiff filed an action for a declaratory judgment of patent infringement and for injunctive relief against Qualcomm Incorporated ("Qualcomm") and OKI America, Inc. ("OKI"),[1] alleging threatened infringement of certain of its patents. ITC subsequently filed two amended complaints making identical allegations with regard to additional patents.

The patents in issue relate to two distinct cellular telephone technologies, one known as Time Division Multiple Access ("TDMA") and the other known as Code Division Multiple Access ("CDMA").[2] Before the court is the motion of defendant Qualcomm to dismiss the CDMA portion of the complaint[3] for lack of subject matter jurisdiction[4] and the motion of OKI to dismiss the TDMA case for lack of subject matter jurisdiction or, in the alternative, to stay or transfer the TDMA case. Also before the court is the motion of plaintiff, ITC, to file a third amended complaint in order to add charges of actual infringement against both defendants.

Both TDMA and CDMA digital technologies are designed to address, among other things, the problem of the limited available frequency spectrum for cellular and wireless telephones. Digital technology increases bandwidth capacity by using the available spectrum more efficiently. The Telecommunications Industry Association ("TIA") develops standards in order to promote industry-wide technological compatibility. In order to be competitive, a cellular telephone manufacturer must produce products compliant with the relevant industry standard. ITC contends that any telephones which comply or are compatible with a standard issued by the TIA known as EIA/TIA/IS–54–B Cellular System Dual–Mode Mobile Station Compatibility Standard ("IS–54–B") will necessarily infringe certain of its TDMA patents. Similarly, ITC contends that any devices which comply or are compatible with the EIA/

---

1. Plaintiff also named OKI America's parent corporation, OKI Electric, as a defendant. The case against OKI Electric was dismissed for lack of personal jurisdiction.

2. ITC alleges that United States Letters Patents 4,675,863; 4,817,089; 4,912,705; 5,022,024 and 5,121,391 cover TDMA technology; that United States Letters Patents 5,179,571 and 5,228,056 cover CDMA technology and United States Let-

ters Patent 5,119,375 covers both TDMA and CDMA technologies.

3. Plaintiff's second amended complaint, which is the pleading currently in effect, shall be referred to as the "complaint."

4. This court has already denied a prior motion to dismiss for lack of subject matter jurisdiction by order dated July 13, 1993.

TIA/IS–95 Mobile Station–Base Station Compatibility Standard For Dual–Mode Wideband Spread Spectrum Cellular Systems ("IS–95") will necessarily infringe certain of its CDMA patents.[5]

Plaintiff alleges in the complaint that both defendants have undertaken substantial activity toward the making, selling and/or using of digital wireless telephone systems which will comply with IS–95 and therefore will infringe its CDMA patents. This pleading also alleges that OKI is engaged in activity directed towards the making, selling and/or using of telephones compliant or compatible with the IS–54–B standard which will infringe certain of ITC's TDMA patents.

## STANDARD OF REVIEW

■ In considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil procedure,[6] the court must first determine whether the motion presents a facial or factual challenge to jurisdiction. Where the movant attacks the sufficiency of the pleading's allegations, the plaintiff is afforded the traditional safeguards attendant upon a motion to dismiss under Rule 12(b)(6).[7] Namely, the allegations must be taken as true and viewed in the light most favorable to the plaintiff. *Cedars–Sinai Medical Center v. Watkins,* 11 F.3d 1573 (Fed.Cir.1993); *See also Mortensen v. First Federal Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). Conversely, once the defendant has challenged jurisdictional facts, the court may receive evidence to resolve the factual dispute. *Mortensen,* 549 F.2d at 891; *International Harvester Co. v. Deere & Co.,* 623 F.2d 1207, 1210 (7th Cir.1980). The plaintiff then bears the burden to establish the existence of subject matter jurisdiction. *Erbamont Inc. v.*

*Cetus Corp.,* 720 F.Supp. 387, 391 (D.Del. 1989). Furthermore, the existence of jurisdiction must be tested as of the time the complaint was filed. *Lang v. Pacific Marine and Supply Co.,* 895 F.2d 761, 764 (Fed.Cir. 1990).

## MOTION OF QUALCOMM TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

■ Qualcomm, in its motion to dismiss the CDMA portion of the complaint for lack of subject matter jurisdiction, first contends that the plaintiff seeks an impermissible advisory opinion. Specifically, Qualcomm argues that the plaintiff asks the court to declare that all existing and future products compliant or compatible with the IS–95 standard will necessarily infringe ITC's patents, rather than seeking a declaration of infringement with respect to specific accused products. This contention challenges the sufficiency of the pleading. Therefore, for the purpose of reviewing this claim, all allegations in the complaint shall be taken as true, and the complaint will be viewed liberally in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "in a case of actual controversy" a court of competent jurisdiction may "declare the rights and other legal relations" of a party "whether or not further relief is or could be sought." In order to satisfy the controversy requirement of Article III of the Constitution,[8] the case must present a "real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of

---

**5.** At the time the original complaint was filed, this standard had not yet been adopted and was known as interim standard PN–3118.

**6.** Rule 12(b)(1) permits the pleader to raise the defense of "lack of jurisdiction over the subject matter" by motion.

**7.** Rule 12(b)(6) permits the pleader to raise the defense of "failure to state a claim upon which relief can be granted" by motion.

**8.** Article III, Sec. 2, provides in relevant part:

The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority ... to Controversies to which the United States shall be a Party; —to Controversies between two or more States; —between a State and Citizens of another States; —between Citizens of different States ...

facts." *Public Service Com. v. Wycoff Co.,* 344 U.S. 237, 242–43, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952).

▮▮▮ The relief requested in the complaint here appears to run afoul of the mandate that this court limit its determination to actual cases and controversies. At least in its prayer for relief, plaintiff seems to seek a determination that all existing and future products built in compliance with an industry standard will necessarily infringe ITC's patents. The complaint's prayer for relief requests:

> [t]hat judgment be entered declaring that [ITC's CDMA patents] will be infringed by Defendants OKI America ... and Qualcomm by their making, contributing to or inducing the making, using or selling of digital wireless telephone systems and equipment which are compatible with and/or comply with the Proposed PN–3118 Standard.[9]

Both the controversy requirement of Article III and the patent case law preclude this court from rendering any decision regarding infringement or potential infringement which is not limited to specific accused products before the court. *See e.g. Laitram Corp. v. Cambridge Wire Cloth Co.,* 919 F.2d 1579 (Fed.Cir.1990) cert. denied, —— U.S. ——, 113 S.Ct. 97, 121 L.Ed.2d 57 (1992). This court may not render a determination of infringement or potential infringement unless that determination is based on a comparison between the patent at issue and an identified product. For example, a finding of infringement may not be based on a comparison between the accused device and an admittedly infringing product, rather than with the patent itself. *Lund Industries, Inc. v. GO Industries Inc.,* 938 F.2d 1273, 1275 (Fed. Cir.1991); *KSM Fastening Systems, Inc. v. H.A. Jones Co.,* 776 F.2d 1522, 1530 (Fed.Cir. 1985). Furthermore, any injunction issued by the court must be limited in scope to specifically identified devices and those no more than colorably different. *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.,* 986 F.2d 476, 479–480 (Fed.Cir.

1993). It follows that the court does not have the authority to render any decision regarding the validity of the IS–95 standard per se or of hypothetical products compliant therewith.

▮▮▮ This conclusion, however, does not necessarily require the court to dismiss the complaint. As explained above, in considering this part of Qualcomm's motion, plaintiff is to be afforded all the safeguards attendant upon a motion to dismiss the complaint under Rule 12(b)(6). In considering such a motion, the complaint is to be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Moreover, the court may award whatever relief is proper under the facts of the case and is not limited by the prayer for relief or the language of the complaint. 3 James W. Moore, et al., Moore's Federal Practice ¶ 8–14, (2d Edition 1993).

▮▮▮ Plaintiff has alleged that its patents cover "digital wireless telephone systems and equipment embodying ... CDMA technology which are compatible with and/or comply with [the IS–95 standard]." (Second amended complaint at ¶ 16). It further alleges that "Qualcomm is in the process of manufacturing telephones, including its CD–3000 Mobile Phone, embodying CDMA technology that would be compatible with and/or comply with [IS–95] and has contracted to sell such CDMA products to the public." (Second amended complaint at ¶ 18). Finally, it states, "The telephones to be made, used or sold by all defendants that embody the CDMA technology will infringe plaintiffs '375 patent, '571 patent and '056 patent." (Second amended complaint at ¶ 22).

▮▮▮ Viewed in the light most favorable to the plaintiff, the complaint does describe specific products which are accused of potential infringement. Those existing Qualcomm products which comply with or are compatible with IS–95 are the specific accused de-

9. The complaint requests identical relief with respect to OKI's products which are compliant with the IS–54–B standard.

vices. Qualcomm does not argue that it is unable to determine which of its products comport with the standard and are therefore accused. In fact, in answer to plaintiff's interrogatories, Qualcomm identified five products which it states it "currently is developing" to be compatible or in compliance with IS–95. These are:

1. RTS (Roving Test System);
2. Mini–Cell;
3. CBS (Commercial Base Station);
4. CD–3000 (Mobile Telephone); and
5. CD–7000 (Portable Telephone).

(Qualcomm's response to Interrogatory No. 6). This court may not render a determination that devices necessarily infringe plaintiff's patents by virtue of compliance with IS–95. Nonetheless, we see no reason why plaintiff may not use the standard as a way to describe in its pleading those products which it wishes to accuse. Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, plaintiff is required only to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff need not identify, in the complaint, specific products by name, so long as they are sufficiently identified in some way.

Plaintiff's original complaint and amended complaints also specifically identify the CD–3000 phone as a potentially infringing product. Qualcomm's assertion that the complaint falls short of actually accusing the CD–3000 phone is without merit. The complaint states that Qualcomm's CDMA products which are compatible with IS–95 will infringe its patents. It further identifies the CD–3000 telephone as a Qualcomm product compatible with that standard. Again, viewing the complaint in the light most favorable to the non-moving party, there can be no doubt that the CD–3000 phone represents a specific accused product.

Qualcomm also asserts that this court lacks subject matter jurisdiction over the declaratory judgment action because its CDMA products are not sufficiently developed to serve as the basis for an actual and substantial controversy as required by Article III. This contention challenges the factual allegations in the complaint. Accordingly, this court may consider evidence outside the pleadings in order to resolve the issue. *See e.g. Mortensen,* 549 F.2d at 891. In order to satisfy the controversy requirement in a declaratory judgment suit brought by the patent holder:

(1) the defendant must be engaged in an activity directed toward making, selling or using subject to an infringement charge under 35 U.S.C. § 271(a) (1982),[10] or be making meaningful preparation for such activity; and (2) acts of the defendant must indicate a refusal to change the course of its actions in the face of acts by the patentee sufficient to create a reasonable apprehension that a suit will be forthcoming,

*Lang v. Pacific Marine & Supply Co.,* 895 F.2d 761, 764 (Fed.Cir.1990).[11] Jurisdiction over the declaratory judgment action must exist at the time the complaint is filed and continue throughout the action. *Spectronics Corp. v. H.B. Fuller Co.,* 940 F.2d 631 (Fed. Cir.1991); *cert. denied,* —— U.S. ——, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991). Defendant has not challenged the second prong of the *Lang* test. Therefore, the court will focus on the first prong: whether Qualcomm is engaged in an activity directed toward making, selling or using a device subject to an infringement charge or making meaningful preparation for such activities.

There is no bright line test for determining the existence of a justiciable controversy. Each case must be viewed on its particular facts. *Lang,* 895 F.2d at 765;

---

**10.** This section provides in relevant part:
Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.

**11.** The holding of the U.S. Circuit Court of Appeals for the Federal Circuit in *Lang* is binding on all subsequent cases pursuant to 28 U.S.C. § 1295(a). That statute confers exclusive jurisdiction over appeals from all U.S. district courts in cases where jurisdiction was based in whole or in part on 28 U.S.C. § 1338. That statute grants district courts original jurisdiction over actions relating to patents.

*International Harvester Co. v. Deere & Co.,* 623 F.2d 1207 (7th Cir.1980). In determining whether an actual controversy exists, courts may consider the immediacy of the alleged threat, the degree of preparation for the potentially infringing activity, and whether the defendant has advertised or solicited orders for the accused product. *See* J. Voight, *Declaratory Judgment Actions in Patent Cases Where There has been no Act of Infringement,* 72 J.Pat. & Trademark Off.Soc'y. 1136 (1990).

▮ A party need not have engaged in actual manufacture, use or sale of a product in order to seek a declaratory judgment of non-infringement or patent invalidity or to be sued in a declaratory judgment action. *International Harvester Co.,* 623 F.2d at 1215; *Lang,* 895 F.2d at 764–765. Moreover, the mere possibility that the design of a product might change or that the product may be discontinued is not alone sufficient to defeat jurisdiction. *Lang,* 895 F.2d at 764. However, the allegations and supporting evidence must establish a substantial controversy of sufficient immediacy and reality to warrant consideration of a claim for declaratory relief. *Lang,* 895 F.2d at 765; *see also Rengo Co. v. Molins Mach. Co.,* 657 F.2d 535, 539 (3d Cir.1981) *cert. denied,* 454 U.S. 1055, 102 S.Ct. 600, 70 L.Ed.2d 591 (1981); *Automation Systems, Inc. v. Intel Corp.,* 501 F.Supp. 345, 347 (S.D.Iowa 1980). Activity directed towards advertising or marketing the accused device is particularly important to a finding of a justiciable controversy. *See* Voight, *Declaratory Judgment* at 1175.

In *Lang v. Pacific Marine and Supply Co.,* 895 F.2d 761 (Fed.Cir.1990), the owner of a patent brought a declaratory judgment action against the manufacturers of a vessel. The patent holder alleged that the structure of the ship's hull would infringe one or more of its patents. The court held that there was not an actual controversy because the hull would not be finished until at least nine months after the complaint had been filed and "the accused infringers had not distributed sales literature, prepared to solicit orders,

or engaged in any activity indicating that the ship would soon be ready for sea." *Id.* at 765. Similarly, in *International Harvester Co. v. Deere & Co.,* 623 F.2d 1207 (7th Cir. 1980),[12] the Court of Appeals for the Seventh Circuit held that there was no justiciable controversy although plaintiff had developed and field tested its product and planned to begin production approximately 18 months after the complaint was filed. The court stressed that no production model had been built, plaintiff had not submitted descriptions of the product to dealers or customers, and had not begun efforts to solicit orders.

Conversely, in *Automation Systems, Inc. v. Intel corp.,* 501 F.Supp. 345 (S.D.Iowa 1980), cited with approval in *Lang,* the court found a justiciable controversy although no product had been made, where sales literature had been distributed, samples would soon be available, and orders would soon be solicited. The court noted that "[i]t will be to no one's advantage to wait for a consideration of the infringing character of a product or process until the actual infringement takes place since this only serves to increase the resulting potential economic harm." *Id.* at 347. *Rengo Co. v. Molins Mach. Co.,* 657 F.2d 535, 538–539 (3d Cir.1981), *cert. denied,* 454 U.S. 1055, 102 S.Ct. 600, 70 L.Ed.2d 591 (1981) is also instructive. There, plaintiff filed an action for infringement of its patent covering portions of a "corrugator," a machine that produces paperboard for cardboard boxes. At the time of the complaint, defendant had not begun manufacture or sale of the accused product. However, defendants had advertised and solicited orders. The Court of Appeals held that even if jurisdiction was originally lacking over the infringement action, defendant's assertion of a counterclaim seeking a declaration of non-infringement conferred jurisdiction on the court over both issues. The court explained that "[b]y advertising and soliciting orders, [defendant] manifested a 'definite intention' to manufacture the accused device." *Id.* at 539. Additionally, the fact that defendant installed a prototype of the device two

---

12. This case concerned an action by the potential infringer for a declaration of non-infringement or patent invalidity. The determination of whether the controversy is sufficiently real and substantial is identical under either posture. *Lang,* 895 F.2d at 764.

months after it filed its answer and counterclaim established that it had the "apparent ability to produce a possibly infringing device." *Id.*

■ Here, ITC has submitted evidence that several third parties have conducted field tests of Qualcomm CDMA telephones. (Affidavit of Robert Bramson at 20–22, and attached exhibits). Qualcomm has entered into license agreements with numerous companies which will make and sell its CDMA equipment compatible with IS–95. (Bramson affidavit at 21–25, and attached exhibits). Qualcomm has entered into such a license agreement with OKI Electric Industry Company, Ltd., the parent company of OKI America. (Bramson affidavit, exhibit 29).

As noted, Qualcomm admits in answers to plaintiff's interrogatories that it is currently developing five products which will comply or be compatible with IS–95. Qualcomm goes on to state that it:

"is unable to specify an exact timeline with respect to the research, development and design of the foregoing products ... In terms of manufacturing activity, it has yet to manufacture sell or distribute in commercial quantities any of the foregoing products. With respect to CD–7000, Qualcomm has recently entered into an agreement under which it will provide prototype versions for testing in 1993, with delivery of commercial units in late 1994. Qualcomm has engaged in limited manufacturing activity relating to prototype versions of the rest of the listed products commencing in or about 1986 and continuing to the present. Qualcomm further has engaged in the sale, deployment, license or other dissemination of prototype versions of such products to third parties pursuant to various confidentiality and non-disclosure agreements in exchange for various monetary payments commencing in or about 1991 and continuing to the present.

(Qualcomm's response to Interrogatory No. 6).

Qualcomm's most recent prospectus, issued in June of 1993, indicates not only the extent of development of Qualcomm's CDMA products, but Qualcomm's intention to continue pursuing this technology. It states in relevant part:

[T]he Company has also developed a digital wireless telephone communications system based on its proprietary CDMA technology, which provides greater capacity and improved quality and reliability compared to existing analog cellular telephone systems and other proposed digital systems. The Company's CDMA technology has undergone extensive field testing and industry review and has been selected for commercial implementation in the United States and Korea. U.S. West, PacTel Cellular and Bell Atlantic Mobile Systems have all announced agreements to purchase commercial CDMA cellular equipment for deployment in their markets. These systems will use QUALCOMM'S CDMA technology in equipment to be manufactured by the Company and its licensees. QUALCOMM licenses manufacturers to build CDMA equipment and makes its CDMA chips available to these licensees ...

This prospectus also makes specific reference to the CD–3000 and CD–7000 phones:

In March 1993, QUALCOMM introduced two dual-mode telephones, the CD–3000 mobile phone and the CD–7000 portable phone. Both phones operate as a digital CDMA phone wherever CDMA digital service is available.... QUALCOMM recently signed a letter of intent with U.S. West regarding a multi-year agreement under which QUALCOMM will provide CDMA dual-mode digital cellular phones to U.S. West. Under the terms of the proposed agreement, QUALCOMM would deliver minimum of 36,000 cellular phones to U.S. West ...

This prospectus, issued approximately two months after the complaint was filed, reveals that Qualcomm was heavily engaged in developing and marketing its CDMA telephones, in particular the CD–3000 and CD–7000 phones at the time the complaint was filed.

Qualcomm has provided no evidence in support of its contention that the controversy is premature. Qualcomm merely relies on a statement by *plaintiff ITC's* President, Robert Bramson, which was made in connection

with a separate action, *Qualcomm Inc. v. InterDigital Communications Corporation,* currently pending in the Southern District of California. Qualcomm filed that action after ITC filed the instant litigation. Qualcomm seeks a declaratory judgment of invalidity and non-infringement of two patents owned by ITC, but not in issue here. In that case, ITC made a motion to dismiss for lack of a ripe case or controversy. In support of that motion, ITC's Robert Bramson stated:

> To date, QUALCOMM's CDMA cellular technology is apparently still in the design phase, and Defendants are unaware of what form QUALCOMM's systems and equipment ultimately will take.... Therefore, the subject action must be dismissed because QUALCOMM can design its equipment or apparatus so as not to infringe the 643 and 840 Patents. An action will lie in the future only if QUALCOMM determines to take the wholly unnecessary step of infringing the patents in suit, a step which Defendants have no reason to believe QUALCOMM will take.

Qualcomm interprets this statement to mean that no specific product or process stands accused of actual or threatened infringement and that ITC lacks a factual basis for such a claim. We disagree. This statement merely represents ITC's belief that Qualcomm could design its products so that they do not infringe on the patents at issue in that case. Those patents are not at issue here. The statement provides no evidence of the actual state of development of Qualcomm's products. It certainly does not refute plaintiff's evidence indicating that Qualcomm is developing and marketing CDMA telephones.

At oral argument, the attorney for Qualcomm asserted, without supporting evidence, that Qualcomm is still in the process of making design changes to its CDMA products. The mere possibility of design changes, however, is not sufficient to divest this court of jurisdiction given the evidence of substantial marketing and development undertaken so far. As the court stated in *Lang,* "[a] concern that the alleged future infringer might alter its course of conduct or discontinue it altogether should not cause a dismissal any more than it should in a suit by the accused infringer." 895 F.2d at 764. Manufacturers constantly make changes to existing products. Not all such changes are material for patent purposes. Even if this court could give credence to the counsel's bald statement, this court has no way of knowing the extent of any contemplated design changes. Without more, counsel's assertion cannot overcome the substantial evidence in this record of an actual case or controversy. Qualcomm's position is further undermined by its counterclaim in which it asserts invalidity and non-infringement of ITC's patents at issue and specifically alleges that "an actual, valid and justiciable controversy has arisen and now exists."

In conclusion, plaintiff has produced evidence establishing that at the time the original complaint was filed in April of 1993, Qualcomm had marketed at least some of its CDMA telephones, constructed prototypes, and entered into license agreements with other companies to produce its products. Qualcomm continues to do so. This evidence satisfies *Lang's* requirement that the defendant be engaged in substantial activity directed toward making, selling or using subject to an infringement charge or making meaningful preparation for such activities. Significantly, defendant has submitted no evidence to contradict plaintiff's evidence.

Plaintiff has sustained its burden of establishing that a justiciable controversy existed at the time the complaint was filed and continues to exist at this time. Qualcomm's motion to dismiss the complaint for declaratory judgment will be denied.

## MOTION OF OKI AMERICA TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION OR IN THE ALTERNATIVE TO STAY OR TO TRANSFER THE TDMA CASE

■ As stated above, OKI America has filed a motion to dismiss the TDMA portion of the case based on lack of subject matter jurisdiction or alternatively to stay or trans-

fer the TDMA case.[13] Like Qualcomm, OKI alleges that given the state of development of its TDMA products there is not a sufficient controversy to support a declaratory judgment action. OKI conceded that it has tested two identical versions of a portable telephone prototype compatible with the IS–54–B standard. However, the prototype did not perform successfully. Specifically, it failed to "hand off to adjacent cells telephone calls placed through a TDMA base station." (Supplemental declaration of John J. Farrell, Jr., Chief Operating Officer of OKI Telecom, an unincorporated division of OKI America, Inc.).

At oral argument, counsel for OKI advised the court that OKI has recently abandoned all efforts to develop a TDMA Cellular telephone compliant with IS–54–B. OKI has also submitted a supporting declaration by John J. Farrell, Jr., stating that OKI America will undertake no further development or testing on any TDMA product designed to be compliant with IS–54–B. (Second Supplemental Declaration of John J. Farrell, Jr.). OKI may at some future time decide to purchase from OKI Electric telephones compliant with the proposed new standard, IS–54+, or other relevant TDMA standard. However, OKI has no current plans to develop, test or manufacture any TDMA cellular telephones until at least one year from now. (*Id.*)

■ Even if at some point OKI may have been engaged in activities directed toward making, selling or using TDMA products, the Farrell Declaration indicates that those efforts have been abandoned. As previously noted, jurisdiction over the declaratory judgment action must exist at the time the complaint was filed and continue throughout the action. *Spectronics Corp. v. H.B. Fuller Co.,* 940 F.2d 631 (Fed.Cir.1991). Furthermore, this court's exercise of jurisdiction over declaratory judgment actions is discretionary. *Spectronics Corp.,* 940 F.2d at 634; *Telectronics Pacing Sys., Inc. v. Ventritex, Inc.,* 982 F.2d 1520, 1527 (Fed.Cir.1992). *Public Service Commissions v. Wycoff Co.,*

344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952). The court should decline to hear a declaratory judgment case where it will serve no useful purpose, or where the parties' contemplated future actions are likely to be unaffected by the entry of judgment. *Step–Saver Data Systems, Inc. v. Wyse Technology,* 912 F.2d 643, 649 (3d Cir.1990). Because OKI is not currently engaging in any activity directed toward possible infringement and no harm appears immediately to be threatened, OKI's motion to dismiss the TDMA portion of the declaratory judgment action will be granted.

■ OKI has also moved, in the alternative, to stay the TDMA case pending the outcome of *Motorola v. Interdigital,* which was filed on October 8, 1993 in the District of Delaware, or to consolidate the TDMA case with that action. In the Delaware action, Motorola alleges the invalidity and unenforceability of the same TDMA patents at issue in this case. OKI states that it will stipulate to be bound by the results of the *Motorola* case. Although the court will grant OKI's motion to dismiss the declaratory judgment action against it, OKI's motion to stay or transfer is not moot in light of ITC's pending motion to amend the complaint. The present action was the first filed and is likely to come to trial before the Delaware case. Furthermore, the two actions involve different products. Consequently, resolution of the Delaware case would not necessarily resolve the issues involved here. The motion to stay or to transfer the TDMA case will be denied.

### MOTION OF ITC TO AMEND THE COMPLAINT

■ ITC has filed a third motion to amend the complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure in order to add allegations of actual infringement against Qualcomm with regard to its CDMA patents and against OKI with regard to its TDMA patents. ITC asserts that these new allegations are based on information obtained through discovery. Rule 15(a)

---

**13.** OKI America was named as defendant in the CDMA case as well but has not moved to dismiss that portion of the case.

provides that "leave [to amend] shall be freely given when justice so requires." Under this rule, the amendment should be allowed in the absence of circumstances such as "undue delay, bad faith or dilatory motive, undue prejudice to the opposing party or futility of amendment." *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir.1988).

Qualcomm's objections to the amendment stem from its contention that the court lacked subject matter jurisdiction over the original complaint. Qualcomm correctly states that jurisdiction must exist at the time the original complaint was filed. *Field v. Volkswagenwerk AG*, 626 F.2d 293, 304–306 (3d Cir.1980); *Lang*, 895 F.2d at 764. However, as explained above, this court has had jurisdiction over the complaint from the inception. Qualcomm's objection to the proposed amendment is therefore without merit.[14]

■■■ OKI America contends that plaintiff's motion to amend should be denied as futile because the proposed additional counts relating to TDMA technology would fail to state claims upon which relief may be granted. Although the court is required freely to permit such amendments, the court may deny the motion where such amendment would be futile, as where the amendment will not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Jablonski*, 863 F.2d at 292. As in a motion to dismiss a complaint for failure to state a claim, this court must accept all allegations in the proposed amended complaint and all reasonable inferences that can be drawn therefrom and view them in the light most favorable to the plaintiff. *Hall v. Pennsylvania State Police*, 433 F.Supp. 385 (E.D.Pa.1976); 3 Moore's Federal Practice ¶ 15–08[4] (2d Edition 1993).

■■■ OKI's attack on the proposed amendments amounts to a factual dispute which is not cognizable with respect to the motion to amend the complaint. Specifically, OKI states that it has not sold a product described in the new proposed counts, has never produced or used such a product which is operable or IS–54–B compliant, and may never produce such a product. Thus, OKI contends that the *factual* basis for the proposed counts is lacking. OKI further contends that because the telephones did not consistently function properly, the testing of those devices cannot constitute use. Even assuming that OKI is correct in its interpretation of what constitutes use within the meaning of the patent laws, the degree to which its telephones functioned properly is a factual matter, which may be determined by summary judgment motions or at trial, but may not be considered in determining the motion to amend the complaint.

■■■ OKI contends that it would be anomalous for the court to allow an action for actual infringement to proceed based on the same facts which would not support an action for declaratory judgment. While this argument has surface appeal, it is flawed because the factual basis of the two actions are not the same. A declaratory judgment action seeks to prevent future harm. This court will dismiss such an action when there is not a sufficiently concrete threat of future harm to confer subject matter jurisdiction on the court. However, with respect to any harm that may have already occurred as a result of OKI's testing of TDMA products or otherwise, ITC may maintain an action for actual infringement.

■■■ The standard for determining whether there is subject matter jurisdiction over the declaratory judgment action is different from the standard for determining a motion to amend the complaint. In determining the former, the court may look beyond the allegations in the pleadings. It may consider any relevant evidence in the record when the factual basis for jurisdiction is challenged. *Mortensen*, 549 F.2d at 891.

---

14. The fact that ITC has now alleged actual infringement does not preclude it from proceeding with the declaratory judgment action. Under Rule 57 of the Federal Rules of Civil Procedure, "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." Furthermore, Rule 8(e)(2) of the Federal Rules of Civil Procedure provides that "a party may state as many separate claims or defenses as the party has regardless of consistency ...."

The state of development of OKI's telephones is relevant to the question of whether a sufficient controversy exists to satisfy the requirement of Article III of the Constitution. The court must first make a preliminary finding of an actual controversy because the fact that harm is merely threatened raises the danger that the court might issue an impermissible advisory opinion. *See e.g. Wycoff*, 344 U.S. at 241, 73 S.Ct. at 239. In contrast, the court does not make a preliminary finding of an adequate controversy in an action for actual infringement because there is no danger that the court will render an advisory opinion. Whether plaintiff has actually been harmed is a subject for consideration by summary judgment or by the factfinder—in this case a jury—at trial. The evidence behind the allegations in the pleading is not relevant to the motion to amend the complaint to allege actual infringement.

■ Because the court finds no evidence of undue delay, bad faith, dilatory motive or undue prejudice, and because the proposed amendment does not appear on its face to be futile, plaintiff's motion to amend the complaint will be granted.

### ORDER

AND NOW, this 16th day of February, 1994, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

1. The motion of defendant Qualcomm Incorporated to dismiss the complaint for lack of subject matter jurisdiction is DENIED.

2. The motion of defendant OKI America, Inc. to dismiss the TDMA case for lack of subject matter jurisdiction or to stay or transfer the TDMA case is granted in part and denied in part as follows:

(a) The motion to dismiss the TDMA case is GRANTED with respect to the declaratory judgment action.

(b) The motion to stay or transfer the TDMA case is DENIED.

3. The motion of plaintiff, Interdigital Technology Corporation, to amend the complaint is GRANTED. Defendants shall file

an answer or other responsive pleading within ten days.