# United States Court of Appeals for the Federal Circuit

04-1365

FORT JAMES CORPORATION,

Plaintiff-Appellee,

v.

SOLO CUP COMPANY,

Defendant-Appellant.

Russell E. Levine, Kirkland & Ellis LLP, of Chicago, Illinois, argued for plaintiff-appellee. With him on the brief was Christopher R. Liro.

Bradley F. Rademaker, Wallenstein Wagner & Rockey, Ltd., of Chicago, Illinois, argued for defendant-appellant. With him on the brief were Linda A. Kuczma and Jeffrey R. Gargano.

Appealed from: United States District Court for the Eastern District of Wisconsin

Chief Judge Rudolph T. Randa

# United States Court of Appeals for the Federal Circuit

04-1365

FORT JAMES CORPORATION,

Plaintiff-Appellee,

v.

SOLO CUP COMPANY,

Defendant-Appellant.

_____

DECIDED:  June 22, 2005

_____

Before RADER, SCHALL, and GAJARSA, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> GAJARSA.  Dissenting opinion filed by <u>Circuit Judge</u> SCHALL.

GAJARSA, <u>Circuit Judge</u>.

Solo Cup Company appeals from a post-trial order of the district court that dismissed for lack of jurisdiction its counterclaim for a declaration of unenforceablity of a patent owned by Fort James Corporation ("Fort James").  <u>Fort James Corp. v. Solo Cup Co.</u>, No. 99-C-0827 (E.D. Wis. Jan. 15, 2003) (order dismissing counterclaim as moot).  Solo Cup also appeals the court's pre-trial evidentiary decision holding that an invention disclosure form was protected by attorney-client privilege.  <u>Fort James Corp. v. Solo Cup Co.</u>, No. 99-C-0827 (E.D. Wis. Nov. 6, 2002) (order denying motion to compel).

Because the district court erred in concluding that a post-trial covenant not to sue filed by Fort James divested it of jurisdiction to hear Solo Cup's counterclaim, we reverse for further proceedings consistent with this opinion. We also reverse the court's determination that the contested disclosure form is protected by attorney-client privilege.

## I.    BACKGROUND

In 1999, Fort James brought suit against Solo Cup alleging infringement of three patents related to disposable pressed paperboard containers (e.g., paper plates) and their methods of manufacture: U.S. Patent Nos. 4,609,140 ("the '140 patent"); 4,606,496 ("the '496 patent")[1]; and 4,721,499 ("the '499 patent"). Solo Cup denied the infringement allegations and counterclaimed for declarations that the patents were invalid, unenforceable, and not infringed. In addition to seeking injunctive relief on its counterclaims, Solo Cup also sought an award of its reasonable attorney fees.

Solo Cup's allegations of invalidity and unenforceability were directed at the '140 patent and grounded in Fort James's conduct during the time period in which the patented invention was developed. The '140 patent claims a high rigidity paper plate and its method of manufacture, which the inventors discovered "by accident" in the course of evaluating production processes used by Fort James between 1980 and 1981. In August and September 1980, commercial production studies were conducted at Fort James's plants in Fort Smith, Arkansas and Darlington, South Carolina. Both subject plants used die A-87, which produced plates with more rigidity than those Fort James manufactured on other dies. The inventors studied die A-87 and determined that it exerted greater pressure on the rim portion of the plate than other die sets, a

---

[1]    The '496 patent was dropped from the lawsuit prior to trial.

discovery that resulted in the '140 patent. While Fort James was studying its commercial production methods, plates manufactured using die A-87 were sold to the public along with other paper plates. Based on this chronology, Solo Cup alleged that commercial sales of the invention claimed in the '140 patent occurred more than one year prior to the patent's application date of April 13, 1982. Accordingly, Solo Cup claimed that the '140 patent was invalid based on the on-sale bar to patentability found in 35 U.S.C. § 102(b).

Solo Cup also claimed that Fort James had knowingly failed to disclose to the Patent and Trademark Office ("PTO") information regarding its pre-critical date commercial activities. During prosecution, Fort James submitted to the PTO a written declaration signed by Patrick Wnek, one of the inventors named on the '140 patent, that described the process by which Fort James discovered the claimed invention. The Wnek Declaration that was submitted to the PTO indicated that "paper plates produced on the presses used in the test runs starting in August 1980 were batched together with other paper plates produced at the plant, warehoused, and ultimately sold to customers." In contrast to this broad statement regarding the initial commercial sales of the invention, an early draft of the Wnek Declaration included a specific date on which the claimed plates were sent to consumers. According to Solo Cup, Fort James's deliberate deletion of the specific dates of its initial commercial sales constituted inequitable conduct such that the '140 Patent should be declared unenforceable and Solo Cup should be entitled to attorney fees pursuant to 35 U.S.C. § 285.

In the course of conducting discovery on its counterclaims, Solo Cup identified a Fort James document referred to as JR0028487. It is a product development

engineering report dated February 2, 1982, which includes the statement "[l]egal counsel has advised a bar was not established during experimental trials at Darlington and Fort Smith." Solo Cup requested the underlying opinion of counsel referenced in JR0028487 and all related documents. Because Fort James had produced the same document during previous litigation concerning the patents in suit, it determined that it could not claim that the document had been produced inadvertently. Accordingly, Fort James produced the requested opinion of counsel and at least four other documents previously withheld as privileged. Included among the produced documents were additional opinions of counsel regarding the applicability of the on-sale bar to the Fort James patents and correspondence with counsel indicating how the claimed invention was discovered and estimating when customers would have seen or used the product.

On December 8, 2000, Solo Cup filed a motion to compel production of a document that it believed properly fell within the scope of the Fort James waiver. Specifically, Solo Cup sought the production of Document 99 identified on Fort James's Schedule of Withheld Documents as an "[i]nvention disclosure statement discussing invention of pressed paperboard plates to maximize plate rigidity." Document 99, which was dated March 20, 1981, was authored by Patrick Wnek and sent to Fort James's in-house counsel. Solo Cup argued that Document 99 concerned the same subject matter as the other previously privileged documents produced by Fort James, namely the conception and commercialization of the claimed invention, and therefore Fort James could not continue to assert that the document was privileged.

The district court reviewed Document 99 in camera to resolve Solo Cup's motion to compel. On November 6, 2002, the court issued an order denying Solo Cup's motion

to compel reasoning that the scope of Fort James's waiver should be construed narrowly by reference only to JR0028487, the document that constituted the initial waiver. In so holding, the district court rejected Solo Cup's argument that the scope of Fort James's waiver should be defined by reference to all the previously privileged documents Fort James produced in acknowledgement of JR0028487. Accordingly, the court determined that the subject matter of Fort James's waiver was "whether the work carried out by Fort James research personnel prior to June 1, 1981, specifically the sale of plates produced during test runs of die A-87 constituted a 'public use' or a 'commercial offer of sale' under 35 U.S.C. § 102(b)." After examining Document 99, the court found that it "does not contain any information concerning" the bars to patentability found in § 102(b). The court expressly found that "[t]he document contains dates surrounding the conception of the invention and a description of it," but that "[t]he spaces on the form that specifically ask for information concerning the dates on which the invention was 'first offered for sale in commerce' have been left blank." Based on its narrow definition of the scope of Fort James's waiver, the court refused to compel Fort James to produce Document 99.

Approximately one month before trial, Fort James filed a motion in limine to preclude Solo Cup from presenting evidence to the jury on inequitable conduct and unclean hands, the issues underlying Solo Cup's unenforceability counterclaim and its request for attorney fees pursuant to 35 U.S.C. § 285. Because the issues were to be tried to the bench and out of concern that Fort James would be prejudiced by Solo Cup's "parade of horribles" before the jury, the district court granted Fort James's motion and effectively bifurcated the trial.

A ten-day jury trial was held in November 2002. After the close of evidence, but before the case was submitted to the jury, Solo Cup filed several written motions for judgment as a matter of law, including a motion for judgment as a matter of law on patent invalidity. The district court deferred ruling on Solo Cup's JMOL motions and submitted the case to the jury. On November 25, 2002, the jury returned a verdict finding that the '140 patent was not invalid and that Solo Cup did not infringe any of the patents in suit.

Immediately after the jury was dismissed, Solo Cup asked the court to schedule a hearing on the issues bifurcated from the jury trial. Fort James opposed Solo Cup's request on the ground that the jury verdict negated the controversy underlying the counterclaim of unenforceability. The parties submitted briefs regarding whether the district court had jurisdiction to hear Solo Cup's counterclaim and claim for attorney fees. As an exhibit to its post-trial brief, Fort James attached a declaration of its general counsel stating that Fort James covenanted not to sue Solo Cup on the three patents originally at issue and that it would not seek to overturn the jury's verdict (the "Post-Verdict Covenant"). On January 16, 2003, the district court dismissed as moot Solo Cup's unenforceability counterclaim on the ground that there was no outstanding case or controversy between the parties in light of the Post-Verdict Covenant.

On June 26, 2003, Solo Cup filed a pleading entitled "Motion to Withdraw Certain Pending Motions for Judgment as a Matter of Law" ("Motion to Withdraw"). The Motion to Withdraw referenced by name and docket number the five JMOL motions filed by Solo Cup on November 25, 2002, none of which had been resolved by the district court. Solo Cup specifically withdrew four of its motions, but maintained and requested

consideration of its motion for judgment as a matter of law regarding the invalidity of the '140 patent. Fort James responded by arguing that the Motion to Withdraw was untimely because it was not filed within ten days of the entry of judgment as required by Federal Rule of Civil Procedure ("FRCP") 50(b). Fort James argued in the alternative that the Motion to Withdraw was moot and the court lacked jurisdiction to hear it because there was no longer a justiciable controversy between the parties. On March 26, 2004, the district court reiterated the reasoning of its January 2003 Order and denied as moot the Motion to Withdraw. Fort James Corp. v. Solo Cup Co., No. 99-C-0827 (E.D. Wis. Mar. 26, 2004) (order dismissing motion for JMOL). Final judgment in the case was entered on March 30, 2004.

Solo Cup filed its Notice of Appeal on April 29, 2004, challenging the district court's dismissal of its unenforceability counterclaim and its request for attorney fees as well as the court's failure to compel production of Document 99. Fort James then filed a motion to dismiss Solo Cup's appeal on the ground that it was untimely filed. In support of its motion, Fort James argued that final judgment in this case was entered on June 16, 2003, pursuant to FRCP 58(b)(2). FRCP 58(b)(2) provides that judgment is entered upon the earlier of the filing of a separate document in the docket or "150 days from entry in the civil docket." According to Fort James, the court's January 16, 2003 Order dismissing Solo Cup's counterclaim finally resolved all issues in the case and therefore acted as a judgment. Because no separate document was entered on the docket, Fort James asserted that final judgment was entered by operation of law on June 16, 2003, 150 days from the entry of the January 16, 2003 Order. Under this theory, Solo Cup was required to file its notice of appeal by July 15, 2003, which it failed to do.

On July 15, 2004, Fort James's motion to dismiss was denied by a single judge of this court. Fort James's argument was rejected on the ground that Solo Cup had timely renewed its motion for judgment as a matter of law concerning invalidity pursuant to FRCP 50(b). Solo Cup filed its renewed motion for JMOL on June 26, 2003, within 10 days of the date on which Fort James alleged that judgment was entered. As a motion under FRCP 50(b), Solo Cup's filing tolled the time to appeal until its renewed motion for JMOL was resolved. See Fed. R. App. Proc. 4(A)(i). Because Solo Cup filed its notice of appeal within thirty days of the district court's order denying its Rule 50(b) motion, its appeal was deemed timely.

## II. DISCUSSION

### A. Standard of Review

A district court's determination of whether an actual controversy exists to support jurisdiction is a question of law subject to plenary appellate review. BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993). The district court's factual determinations made in the process of resolving questions of law are reviewed for clear error. Vanguard Research, Inc. v. Peat, Inc., 304 F.3d 1249, 1254 (Fed. Cir. 2002).

This court applies the law of the regional circuit, here the Seventh Circuit, with respect to questions of attorney-client privilege and waiver of attorney-client privilege. GFI, Inc. v. Franklin Corp., 265 F.3d 1268, 1272 (Fed. Cir. 2001). In the Seventh Circuit, applicability of privilege is a factual question subject to a clearly erroneous standard of review. Rehling v. City of Chicago, 207 F.3d 1009, 1019 (7th Cir. 2000).

B.    Jurisdiction of Solo Cup's Appeal

Fort James reasserts its claim previously resolved by the order of a single judge of this court, namely that Solo Cup's notice of appeal was not timely filed.  As an initial matter, we note that Fort James should properly have renewed its jurisdictional challenge by filing a motion to reconsider the single judge's order within fourteen days of its issuance as required by Federal Circuit Rule 27(*l*).  Fort James's failure to comply with Rule 27(*l*) is not fatal, however, because this court has held that the merits panel is not bound by the action of a single judge.  Typeright Keyboard Corp. v. Microsoft Corp., 374 F.3d 1151, 1157 n.5 (Fed. Cir. 2004); Fieldturf, Inc. v. Southwest Recreational Indus., Inc., 357 F.3d 1266, 1268 (Fed. Cir. 2004); Nilssen v. Motorola, Inc., 203 F.3d 782, 785 n.2 (Fed. Cir. 2000).  Although the appellee in Nilssen filed a motion for reconsideration, 203 F.3d at 783, there is no indication that the appellees in either Typeright or Fieldturf complied with the procedural requirement of Rule 27(*l*).  Accordingly, Typeright and Fieldturf support Fort James's assertion that it is entitled to have its jurisdictional claim heard by the merits panel notwithstanding its failure to comply with Rule 27(*l*).  Without acknowledging the existence of Rule 27(*l*), Fieldturf states that because a motion to dismiss denied by a single judge does not become law of the case, the panel is "therefore free, indeed obligated" to determine whether jurisdiction is appropriate.  357 F.3d at 1268.  In contrast, no precedential opinion has strictly adhered to the provisions of Rule 27(*l*) to resolve an appellee's challenge to this court's jurisdiction.  Given the precedent of Typeright and Fieldturf and the court's responsibility to police the exercise of its jurisdiction, we conclude that it is best to reach

04-1365                                    9

the merits of Fort James's jurisdictional argument despite its limited procedural deficiencies.

Fort James argues that its motion to dismiss was improperly denied because Solo Cup's purported Rule 50(b) motion was legally inadequate to toll the appeal deadline. Fort James claims that the Motion to Withdraw, whereby Solo Cup renewed its request for a JMOL on invalidity, failed to comply with the particularity requirement of FRCP 7.

Because the sufficiency of post-judgment motions is a procedural matter not unique to patent law, the law of the Seventh Circuit sets the standard by which we judge the adequacy of Solo Cup's Motion to Withdraw. Registration Control Sys., Inc. v. Compusystems, Inc., 922 F.2d 805, 807 (Fed. Cir. 1990). FRCP 7(b)(1) requires that motions "shall state with particularity the grounds therefor." The Seventh Circuit has determined that the rule's standard for particularity means "reasonable specification." Martinez v. Trainor, 556 F.2d 818, 819-20 (7th Cir. 1977). In the process of applying Seventh Circuit law, this court has previously indicated that the particularity requirement should be applied flexibly in recognition of the peculiar circumstances of the case. Registration Control, 922 F.2d at 808. The key issue to be resolved is whether the document filed affords "notice of the grounds and prayer of the motion to both the court and to the opposing party, providing that party with a meaningful opportunity to respond and the court with enough information to process the motion correctly." Id. at 807.

Here, there is no question that Solo Cup's Motion to Withdraw – by itself – did not explain the grounds for its renewed motion for JMOL. Instead, Solo Cup specifically referenced its pending "Motion for Judgment As a Matter of Law That Claim 1 of U.S.

Patent No. 4,609,140 is Invalid Under 35 U.S.C. § 102(b)" and requested "consideration of the foregoing pending motion (Court's Docket No. 374)." The motion that Solo Cup cited by name and docket number included five pages of factual and legal arguments in support of Solo Cup's claim for JMOL. When the Motion to Withdraw is read in conjunction with the document specifically referenced therein, there is no question regarding the grounds for the relief demanded. In such circumstances, it is appropriate to consider previously filed documents outside the four corners of the motion in determining whether the particularity requirement of FRCP 7 has been satisfied. Lac Du Blambeau Band of Lake Superior Chippewa Indians v. Wis., 957 F.2d 515, 516-17 (7th Cir. 1992) (holding that a brief filed contemporaneously with a motion fulfills the requirement of FRCP 7(b)(1)); Andreas v. Volkswagen of Am., Inc., 336 F.3d 789, 794 (8th Cir. 2003) (approving a district court's reference to a FRCP 50(a) pleading in determining the sufficiency of a FRCP 50(b) motion); Cambridge Plating Co., Inc. v. NAPCO, Inc., 85 F.3d 752, 761 (1st Cir. 1996) (rejecting as "overly technical" the district court's premise that the sufficiency of a post-judgment motion should be determined by reference only to the four corners of the motion). When put in context of this particular case, the Motion to Withdraw sufficiently alerted Fort James and the court to the issues Solo Cup was raising. The Motion to Withdraw satisfied the particularity requirement of FRCP 7(b)(1) and constituted a valid Rule 50(b) motion such that Solo Cup's time to appeal did not start running until the motion was finally resolved by the district court. Solo Cup's Notice of Appeal was timely filed and this court has jurisdiction to hear its appeal pursuant to 28 U.S.C. § 1295(a).

04-1365                                    11

C.      Jurisdiction of the District Court to Hear Solo Cup's Counterclaim

The district court dismissed Solo Cup's counterclaim for a declaration that the '140 patent is unenforceable on the ground that the Post-Verdict Covenant mooted the controversy between the parties.  Pursuant to 28 U.S.C. § 2201(a), a declaratory judgment counterclaim may only be brought to resolve an "actual controversy." Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc., 248 F.3d 1333, 1340 (Fed. Cir. 2001).  In holding that no actual controversy existed here, the district court relied primarily on this court's jurisprudence in Super Sack Manufacturing Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1058 (Fed. Cir. 1995).

In Super Sack, this court stated that "a patentee defending against an action for a declaratory judgment of invalidity can divest the trial court of jurisdiction over the case by filing a covenant not to assert the patent at issue against the putative infringer with respect to any of its past, present, or future acts." Id. at 1058.  The rationale applied by the court in Super Sack was that the patentee's covenant not to sue resolved the actual controversy between the parties, i.e., the question of infringement of the subject patent, such that the court no longer had Article III jurisdiction to hear a declaratory judgment action regarding the validity or enforceability of that patent.  Id.; Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 635-36 (Fed. Cir. 1991).  Here, the district court concluded that in light of the Post-Verdict Covenant there was no actual controversy between the parties capable of resolution by a hearing on the unenforceability of the '140 Patent and therefore Solo Cup's counterclaim was moot.

The district court's literal application of the holding of Super Sack fails to comprehend the unique procedural posture of the instant case.  In Super Sack and its

progeny, the patentee's covenant not to sue was filed prior to consideration or resolution of the underlying infringement claim. In such circumstances, the promise not to sue obviated any reasonable apprehension that the declaratory judgment plaintiff might have of being held liable for its acts of infringement. Super Sack, 57 F.3d at 1059 (as a result of the patentee's promise not to sue, the declaratory judgment plaintiff "has no cause for concern that it can be held liable for any infringing acts"); Spectronics, 940 F.2d at 636 (the patentee's statement of non-liability made the declaratory judgment plaintiff immune to suit under the claims of the contested patent); see also Intellectual Prop. Dev., 248 F.3d at 1341; Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 855 (Fed. Cir. 1999). Here, however, the Post-Verdict Covenant had no effect on Fort James's claim for infringement, because that controversy had already been resolved by the jury's verdict. The question then becomes whether the court retained jurisdiction to hear Solo Cup's declaratory judgment counterclaim after the jury determined that Solo Cup's products do not infringe Fort James's patents.

As the Supreme Court has explained, a case or controversy adequate to support jurisdiction of a declaratory judgment counterclaim necessarily exists if a party has actually been charged with infringement of a patent. Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 95 (1993). Furthermore, a counterclaim questioning the validity or enforceability of a patent raises issues beyond the initial claim for infringement that are not disposed of by a decision of non-infringement. Id. at 96; Altvater v. Freeman, 319 U.S. 359, 364 (1943). Accordingly, the jury verdict holding that Solo Cup did not infringe Fort James's patents did not moot Solo Cup's counterclaim for unenforceability nor did it act to divest the district court of jurisdiction to hear that unlitigated

counterclaim. See <u>Fin Control Sys. Pty, Ltd. v. OAM, Inc.</u>, 265 F.3d 1311, 1321 (Fed. Cir. 2001) (holding that despite the district court's determination of no infringement, it was obligated to consider and rule on defendant's counterclaims of invalidity and unenforceability prior to entering judgment); <u>Gen. Elec. Co. v. Nintendo Co., Ltd.</u>, 179 F.3d 1350, 1356 (Fed. Cir. 1999) (stating that "our affirmance of a district court's judgment of noninfringement does not, by itself, moot the declaratory judgment claim of invalidity").[2]  The district court erred as a matter of law in holding that it did not have jurisdiction to hear Solo Cup's counterclaim.  The case is remanded for resolution of the issues properly before the court prior to its order to bifurcate, namely Solo Cup's claims of unenforceability on the basis of inequitable conduct and its request for attorney fees pursuant to 35 U.S.C. § 285.[3]

D.    Scope of Fort James's Privilege Waiver

Solo Cup argues that the district court committed clear error in determining that Document 99, an invention disclosure statement, was not within the ambit of the privilege waiver created by Fort James's production of JR0028487.  Solo Cup ascribes

---

[2]    <u>Paragon Podiatry Lab., Inc. v. KLM Lab., Inc.</u>, 984 F.2d 1182, 1188 n.6 (Fed. Cir. 1993); <u>Buildex Inc. v. Kason Indus., Inc.</u>, 849 F.2d 1461, 1466 (Fed. Cir. 1988).

[3]    Fort James argues that Solo Cup failed to preserve its claim for attorney fees under § 285 by not raising the issue properly before the district court.  This argument ignores the fact that Solo Cup expressly requested attorney fees as a remedy for its counterclaim and that the parties' pre-trial briefings identified as an issue for trial the question of whether Solo Cup was entitled to such an award pursuant to § 285. Section 285 grants the district court the power to award attorney fees in exceptional cases, but it places no procedural limitations on the court's ability to make such an award provided that it has jurisdiction over the case.  <u>Sun-tek Indus., Inc. v. Kennedy Sky Lites, Inc.</u>, 929 F.2d 676, 678 (Fed. Cir. 1991) (deeming a grant of attorney fees under 35 U.S.C. § 285 made "long after final judgment was entered" to be "a nullity"); <u>cf.</u> Fed. R. Civ. P. 54(d)(2) (requiring that motions for attorney fees be filed no later than 14 days after entry of judgment).  Under the circumstances, we see no reason to deny the district court the power to consider Solo Cup's claim for attorney fees pursuant to § 285.

04-1365                                    14

error to the district court's description of the subject matter of the waiver by reference only to JR0028487. Solo Cup also asserts that even applying the district court's limited definition of Fort James's waiver, Document 99 properly falls within that scope and must be produced.

The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter. Genentech, Inc. v. U.S. Int'l Trade Comm'n, 122 F.3d 1409, 1416 (Fed. Cir. 1997); In re Grand Jury Proceedings, 78 F.3d 251, 255 (6th Cir. 1996); In re Cont'l Ill. Sec. Litig., 732 F.2d 1302, 1314 n.18 (7th Cir. 1984). The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not. Weil v. Inv./Indicators, Research & Mgmt., Inc., 647 F.2d 18, 24 (9th Cir. 1981) (quoting VIII J. Wigmore, Evidence § 2291, at 636 (McNaughton rev. 1961) for the proposition that fairness dictates that a privilege holder "cannot be allowed, after disclosing as much as he pleases, to withhold the remainder"); Abbott Labs. v. Baxter Travenol Labs., Inc., 676 F. Supp. 831, 832 (E.D. Ill. 1987). There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures. See In re Keeper of the Records XYZ Corp., 348 F.3d 16, 23 (1st Cir. 2003) (stating that case law is of limited assistance in determining the scope of a waiver because of the fact-intensive nature of the issues presented); Eco Mfg. LLC v.

04-1365                                  15

<u>Honeywell Int'l, Inc.</u>, No. 1:03-cv-0170, 2003 U.S. Dist. LEXIS 7257, at *5 (S.D. Ind. Apr. 11, 2003) (citing <u>U.S. v. Skeddle</u>, 989 F. Supp. 917, 919 (N.D. Ohio 1997)).

The district court here determined that the scope of Fort James's waiver should be defined by reference only to its initial disclosure of JR0028487. Because the extent of the privileged material contained in JR0028487 was a two-line reference to counsel's conclusion that Fort James's pre-filing activities did not raise a bar to patentability, the court concluded that only communications specifically referencing commercial sales or public disclosures of the invention were within the subject matter of the waiver. In reaching this conclusion, the court expressly refused to consider the content of the material Fort James voluntarily produced in acknowledgment of its initial waiver. The court excluded the additional documents from its definition in order to avoid exponentially expanding the scope of the waiver through a never-ending "snowball effect." The formerly withheld documents produced by Fort James directly addressed the conception and reduction to practice of the claimed invention as well as Fort James's pre-critical date activities.

The district court committed two errors in denying Solo Cup's motion to compel production of Document 99. First, it failed to recognize the import of Fort James's knowing disclosure of privileged documents to a third party, conduct which acts as a surrender of the privilege protection. <u>Burden-Meeks v. Welch</u>, 319 F.3d 897, 899 (7th Cir. 2003). If the additional documents produced by Fort James involved subject matter beyond the applicability of the on-sale bar mentioned in JR0028487, then Fort James should have redacted those portions of the documents produced. A party's failure to protect its privilege can result in a loss of that privilege. <u>Dellwood Farms, Inc. v. Cargill,</u>

Inc., 128 F.3d 1122, 1126 (7th Cir. 1997).  Although admirable, Fort James's stated desire to avoid court intervention in the discovery process would not entitle it to dodge the consequences of any careless disclosures.  The court erred in concluding that the additional documents produced by Fort James were not relevant to its determination of the scope of Fort James's privilege waiver.

The impact of this initial error is minimal because the court properly defined the subject matter of the waiver as the application of the bars to patentability found in 35 U.S.C. § 102(b).  Reversible error occurred, however, when the court determined that only documents containing information on Fort James's commercial activities were within the scope of that waiver.

The Supreme Court has articulated a two-prong test for determining whether § 102(b) bars patentability: 1) the product must be the subject of a commercial offer for sale; and 2) the invention must be ready for patenting.  Pfaff v. Wells Elec. Inc., 525 U.S. 55, 67 (1998).  The second prong of this test necessarily implicates the conception and reduction to practice or enablement of the invention.  Id. at 67-68.  Accordingly, Fort James's waiver encompassed not only communications involving commercial sales of the claimed invention, but also communications concerning the inventor's recognition and development of the invention.  It would be unfair to permit Fort James to rely on favorable legal opinions, but protect the communications on which those opinions depend.  See In re Martin Marietta Corp., 856 F.2d 619, 623 (4th Cir. 1988) (stating that "if a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as 'the details underlying the data which was to be published' will not enjoy the privilege" (quoting United States

v. (Under Seal), 748 F.2d 871, 875 (4th Cir. 1984)); United States v. Woodall, 438 F.2d 1317, 1324 (5th Cir. 1970) ("a client's offer of his own or his attorney's testimony as to a specific communication constitutes a waiver as to all other communications on the same subject matter"); BASF Aktiengesellschaft v. Reilly Indus., Inc., 283 F. Supp. 2d 1000, 1003 (S.D. Ind. 2003) (requiring the production of all documents exchanged regarding the subject matter of the produced legal opinion); Blackhawk Molding Co., Inc. v. Portola Packaging, Inc., No. 03-C-6060, 2004 U.S. Dist. LEXIS 19850 (N.D. Ill. Sept. 30, 2004) (construing production of legal opinions concerning a patent's validity and enforceability to waive privilege on communications regarding claim construction on which the validity and enforceability opinions necessarily rely); Motorola, Inc. v. Vosi Techs., Inc., No. 01-C-4182, 2002 U.S. Dist. LEXIS 15655 (N.D. Ill. Aug. 19, 2002) (holding that a party's desire to rely on counsel's opinions regarding validity requires it to disclose all pre-suit communications of counsel that include construction of the same patents). Document 99 was drafted well before the filing of the patent application and concerns the conception and reduction to practice of the claimed invention, matters that are directly related to the on sale bar to patentability. We hold that the district court committed clear error in determining that Fort James's waiver of privilege did not encompass Document 99.

### III. CONCLUSION

For the foregoing reasons, we reverse the district court's determination that it did not have jurisdiction to hear Solo Cup's counterclaim and its holding that Document 99 was not encompassed within Fort James's waiver of the attorney-client privilege. We remand for further proceedings consistent with this opinion.

## IV.   COSTS

No costs.

## REVERSED and REMANDED

# United States Court of Appeals for the Federal Circuit

04-1365

FORT JAMES CORPORATION,

Plaintiff-Appellee,

v.

SOLO CUP COMPANY,

Defendant-Appellant.

SCHALL, <u>Circuit Judge</u>, dissenting.

The court holds that the district court erred in ruling that Fort James's covenant not to sue Solo Cup for patent infringement divested the court of subject matter jurisdiction over Solo Cup's counterclaim for a declaration that the '140 patent was unenforceable. In my view, however, Fort James's covenant not to sue eliminated any live case or controversy between the parties and thereby rendered Solo Cup's unenforceability counterclaim moot. I thus would affirm the judgment of the district court. I therefore respectfully dissent.

I.

The Declaratory Judgment Act states that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration," provided there exists "a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a) (2000). The statute requires a court to determine whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of

declaratory judgment." Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941).

In determining whether such a controversy exists with respect to claims for patent-based declaratory relief, we have developed a two-part test under which:

> [t]here must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993); see also Teva Pharm. USA, Inc. v. Pfizer, Inc., 395 F.3d 1324, 1332 (Fed. Cir. 2005). "The element of threat or reasonable apprehension of suit turns on the conduct of the patentee, while the infringement element depends on the conduct of the asserted infringer." BP Chems., 4 F.3d at 978.

A party seeking a declaratory judgment bears the burden of establishing the existence of an actual controversy. Sierra Applied Scis. v. Advanced Energy Indus., Inc., 363 F.3d 1361, 1373 (Fed. Cir. 2004). Moreover, the "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Preiser v. Newkirk, 422 U.S. 395, 401 (1975). Accordingly, the declaratory-judgment plaintiff has the burden of establishing that "jurisdiction over its declaratory judgment action existed at, and has continued since, the time the [counterclaim] was filed." Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1058 (Fed. Cir. 1995) (citation omitted); Sierra Applied Scis., 363 F.3d at 1373. We have therefore held that a patentee may divest a court of subject matter jurisdiction over an accused infringer's declaratory judgment action by covenanting not to sue the accused infringer for past or present acts

of infringement. Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 855-56 (Fed. Cir. 1999); Super Sack, 57 F.3d at 1059-60.

In Super Sack, for example, Super Sack Manufacturing Corporation ("Super Sack") sued Chase Packaging Corporation ("Chase") for infringement of two of its patents. 57 F.3d at 1055. Chase denied infringement and counterclaimed for declaratory judgment of non-infringement and invalidity. Id. After completion of discovery, Super Sack moved for summary judgment, which the trial court denied. Id. at 1055-56. Chase subsequently moved for summary judgment of non-infringement and invalidity. The court did not, however, rule on Chase's motion. Id. at 1056. Subsequently, Chase requested that the court consider its summary judgment motion. In addition, Chase sought leave to amend its pleadings to include an inequitable conduct counterclaim. Id. Super Sack then filed a motion to dismiss the case for lack of jurisdiction based on its promise "not to sue Chase for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by Chase." Id. The district court granted Super Sack's motion and dismissed the case.

On appeal, we affirmed the district court's decision to dismiss the case for lack of jurisdiction. We reasoned that, in view of Super Sack's covenant not to sue, "Chase can have no reasonable apprehension that it will face an infringement suit on the '796 and '652 patents with respect to past and present products," and that Chase's counterclaims therefore "fail[] to satisfy the first part of our two-part test of justiciability [of claims for declaratory judgment]." Id. at 1059. At the same time, we rejected Chase's argument that a case or controversy persisted because Super Sack's covenant did not apply to products developed in the future. In doing so, we pointed out that "the

second part of our test of declaratory justiciability respecting patent rights requires that the putative infringer's "<u>present</u> activity" place it at risk of infringement liability. <u>Id.</u> (quoting <u>BP Chems.</u>, 4 F.3d at 978) (emphasis in original).

## II.

In this case, I understand the court to recognize that, under the holding of <u>Super Sack</u>, "a patentee defending against an action for a declaratory judgment of invalidity can divest the trial court of jurisdiction over the case by filing a covenant not to assert the patent at issue against the putative infringer with respect to any of its past, present, or future acts."[1]  57 F.3d at 1058.  The court holds, however, that Fort James's covenant did not divest the trial court of subject-matter jurisdiction in this particular case. According to the court, that is because "the Post-Verdict Covenant had no effect on Fort James's claim for infringement, because that controversy had already been resolved by the jury's verdict."  In other words, the court reasons that the rationale of <u>Super Sack</u> does not apply if the patentee issues a covenant not to sue after a finding of non-infringement.

The court states that the Supreme Court decided in <u>Cardinal Chemical Co. v. Morton International, Inc.</u>, 508 U.S. 83, 95 (1993), that "a case or controversy adequate to support jurisdiction of a declaratory judgment counterclaim necessarily exists if a party has actually been charged with infringement of a patent."  Relying on <u>Cardinal Chemical</u>, 508 U.S. at 96, <u>Altvater v. Freeman</u>, 319 U.S. 359, 364 (1943), <u>Fin Control Systems Pty, Ltd. v. OAM, Inc.</u>, 265 F.3d 1311, 1321 (Fed. Cir. 2001), and <u>General</u>

---

[1]  As discussed, the actual holding of <u>Super Sack</u> was that a covenant not to sue for past or present acts of infringement is sufficient to divest the court of subject-matter jurisdiction.  57 F.3d at 1059.

Electric Co. v. Nintendo Co., Ltd., 179 F.3d 1350, 1356 (Fed. Cir. 1999), the court states that the jury verdict of non-infringement did not moot the case because claims of unenforceability and invalidity raise issues beyond those presented by the infringement claim.

III.

I agree with the court that "a case or controversy adequate to support jurisdiction of a declaratory judgment counterclaim necessarily exists if a party has actually been charged with infringement of a patent." Cardinal Chem., 508 U.S. at 95. I further agree that a finding of non-infringement does not, by itself, moot a counterclaim of invalidity or unenforceability. Where I part company with the court is in my view that Fort James's covenant had the effect of eliminating any real and immediate controversy between the parties and, therefore, mooted Solo Cup's counterclaim.

The covenant was submitted by James F. Kelley, Executive Vice President and General Counsel of Georgia-Pacific Corporation (the entity that owns Fort James). Mr. Kelley stated:

> I hereby declare that Fort James unconditionally covenants not to assert any claim of patent infringement against Solo Cup Company ("Solo") under any claim of United States Patent Nos. 4,609,140 ("the '140 patent"), 4,606,496 ("the '496 patent"), and 4,721,499 ("the '499 patent") with respect to any product currently advertised, manufactured, marketed or sold by Solo, or any product which was advertised, manufactured or sold by Solo prior to December 13, 2002.

It is not disputed that Mr. Kelley had authority to speak for Fort James. Therefore, once Fort James issued the covenant, Solo Cup no longer faced the risk of liability for infringement of the '140 patent based on past or present acts. That is to say, Solo Cup no longer faced the prospect of Fort James pursuing its original infringement claim—

through, say, an appeal to this court—or the risk of being sued for other present or past acts of perceived infringement. Under these circumstances, I do not see how Solo Cup's counterclaim continues to satisfy the first prong of our jurisdictional test.

It is true that this case differs from Super Sack in that Fort James did not issue its covenant until after the jury's finding of non-infringement, but I do not think that fact creates or, rather, sustains, the controversy between the parties. That is because, while the timing of the covenant may seem unfair to Solo Cup, the fact remains that Solo Cup is no longer at risk of liability for infringement of the '140 patent. Indeed, the situation in Super Sack actually presented more of a controversy than this case because, there, the defendant still faced the risk of infringement based on future activity, see Super Sack, 57 F.3d at 1059 (acknowledging that the defendant "may have some cause to fear an infringement suit" based on products to be developed in the future), whereas in this case, the '140 patent has expired. Solo Cup therefore faces no risk of liability for infringement of the '140 patent. A decision as to the enforceability of the '140 patent would consequently have no effect on the legal relationship of the parties, i.e., Solo Cup's claim of unenforceability is moot. See DeFunis v. Odegaard, 416 U.S. 312, 316-17 (1974) (holding that the case was moot because the Court could no longer provide meaningful relief); North Carolina v. Rice, 404 U.S. 244, 246 (1971) ("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them."); Powell v. McCormack, 395 U.S. 486, 496 (1969) ("A case is moot

when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.").[2]

My view that there is no longer a live controversy in this case is also unaffected by the fact that it was Fort James that requested the trial court bifurcate the unenforceability claim from the infringement and invalidity claims. I acknowledge that it may seem unfair to allow a patentee to first proceed with its infringement claim and then, if the result is not favorable, eliminate the court's jurisdiction over the accused infringer's counterclaim by covenanting not to sue the accused infringer. Fairness is not part of the jurisdictional inquiry, however. See Hercules Inc. v. United States, 516 U.S. 417, 430 (1996) ("[W]e are constrained by our limited jurisdiction and may not entertain claims 'based merely on equitable considerations.'" (citation omitted)). Rather, federal courts must determine whether there is an actual case or controversy, i.e., whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." Md.

---

[2] Claims for attorney's fees are collateral to the underlying lawsuit for which the fees are sought. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 200-01 (1988) (holding that an attorney's fee award is separate from a trial court's decision on the merits for purposes of the time limits set for appeals under Fed. R. App. P. 4); Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 170 (1939) (indicating that motions for attorney's fees are "independent proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree"). The issue of attorney's fees is consequently distinct from, and has no effect on, the question of whether a case has become moot. See Zucker v. Occidental Petroleum Corp., 192 F.3d 1323, 1329 (9th Cir. 1999) ("No Article III case or controversy is needed with regard to attorney's fees . . . because they are but an ancillary matter over which the district court retains equitable jurisdiction even when the underlying case is moot." (emphasis added)).

<u>Cas. Co.</u>, 312 U.S. at 273. If a case is found to lack such a controversy, then the court's only choice is to dismiss the case.[3]

In short, although an actual controversy may have existed at the time the jury issued its verdict of non-infringement, that controversy became moot when Fort James issued its covenant not to sue. Accordingly, I would affirm the judgment of the district court dismissing Solo Cup's counterclaim seeking a declaratory judgment that the '140 patent is unenforceable. I therefore respectfully dissent.

---

[3]    This is not to say that Fort James's overall litigation conduct could not be used by Solo Cup in trying to establish the existence of an "exceptional case" in a timely motion for attorney's fees under 35 U.S.C. § 285. <u>See</u> <u>Zucker</u>, 192 F.3d at 1329 (holding that a trial court still has jurisdiction to entertain motions for attorney's fees after the underlying action has become moot); <u>see also</u> <u>Gator.com Corp. v. L.L. Bean, Inc.</u>, 398 F.3d 1125, 1133 n.1 (9th Cir. 2005) (<u>en</u> <u>banc</u>) (Tashima, J., concurring).