*1350 DYK, Circuit Judge,
dissenting.
If this declaratory judgment action were filed today, I would agree with the majority that the required case or controversy had not been established. I also agree that there must be a case or controversy at all stages of the litigation. See Steffel v. Thompson, 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). However, in my view, a different test for determining whether there is a case or controversy applies when the allegation of infringement is withdrawn during the course of litigation. Supreme Court precedent requires that, if a patentee files an infringement lawsuit and the particular claim of infringement is mooted, a counterclaim for invalidity should not be dismissed unless the patentee demonstrates that there is no possibility of a future controversy with respect to invalidity. See Cardinal Chem. Co. v. Morton Int’l, Inc., 508 U.S. 83, 98, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993). In my view, Benitec made no such showing.
I
There is a strong public interest in permitting accused infringers to challenge invalid or unenforceable patents. See Cardinal Chem., 508 U.S. at 100, 113 S.Ct. 1967; Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 345-47, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); Lear, Inc. v. Adkins, 395 U.S. 653, 663-64, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969); Altvater v. Freeman, 319 U.S. 359, 364-65, 63 S.Ct. 1115, 87 L.Ed. 1450 (1943). The Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 (1934), plays an important role in facilitating such challenges, in particular by preventing patent holders from threatening enforcement while avoiding litigation that might render the patent invalid or unenforceable. See Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 734-35 (Fed.Cir.1988). The Supreme Court in MedImmune, Inc. v. Genentech, Inc., — U.S. -, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007), has recently emphasized the importance the Declaratory Judgment Act plays in protecting against the Hobson’s choice of abandoning lawful endeavors or risking liability for infringement.[1] Id. at 772-73.
Here Benitec sued Nucleonics for infringement of Benitec’s patent, broadly alleging that Nucleonics is “engaged in making, using, offering to sell, and selling gene silencing technologies that are the same or equivalent to the technologies claimed in the Benitec patent.” J.A. at 71. Nucleon-ics timely answered the complaint, denying infringement and, nearly ten months later, moved to add declaratory judgment counterclaims asserting invalidity and unen-forceability. At the time of Nucleonics’s counterclaim filing, it was clear that there was declaratory jurisdiction because “[i]f ... a party has actually been charged with infringement of the patent, there is, necessarily, a case or controversy adequate to support jurisdiction of a complaint, or a counterclaim, under the Act.” Cardinal Chem., 508 U.S. at 96, 113 S.Ct. 1967 (emphasis in original); see also Arrowhead, 846 F.2d at 736.
Nonetheless, the majority holds that when the accused infringer has been sued *1351 “[t]he burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since.” Op. at 1344. In my view, the majority’s approach erroneously applies the same standard for judging continuing declaratory jurisdiction as for judging original declaratory jurisdiction.
II
Here the patentee’s manipulative efforts to defeat declaratory jurisdiction are clear enough. After Nucleonics moved to add the counterclaims, the Supreme Court decided Merck KGaA v. Integra Lifesciences I, Ltd., 545 U.S. 193, 125 S.Ct. 2372, 162 L.Ed.2d 160 (2005), which addressed the 35 U.S.C. § 271(e)(1) safe harbor for research.[2] In Merck, the Supreme Court clarified that the safe harbor protects any research using a patented compound where the “drugmaker has a reasonable basis for believing that [the] patented compound may work ... to produce a particular physiological effect, and uses the compound in research that, if successful, would be appropriate to include in a submission to the FDA.” Merck, 545 U.S. at 207, 125 S.Ct. 2372. The patentee does not claim that Merck provides any protection for commercial production of compounds for humans or production of or, even research for, animal compounds.
Following the Merck decision, Benitec, suggesting that it was unlikely to prevail on infringement claims directed to research on medical compounds for humans, filed a motion to dismiss the case without prejudice under Federal Rule of Civil Procedure 41(a)(2), asserting that there was no longer a continuing case or controversy. As the majority appears to recognize, op. at 1342-43, the motion may well have been motivated by a desire to avoid a patent invalidity determination.
Benitec did not offer a formal covenant not to sue before the district court. Rather, it stated in its motion to dismiss that it “could only bring new claims if Nucleonics is ultimately successful in obtaining FDA approval for its infringing products or otherwise engages in infringing activities not otherwise permitted under the § 271(e) exemption.” J.A. at 1379. Nucleonics opposed the motion to dismiss on several grounds, including that there was a continuing controversy because it had taken “concrete steps ... with the intent to conduct” allegedly infringing activity, including research on drugs for animals. BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed.Cir.1993).[3] The district *1352 court granted the motion to dismiss without prejudice finding that, although “Nu-cleonics has demonstrated a reasonable apprehension of suit,” it “has not demonstrated that it has produced or has prepared to produce a product that would be the target of an infringement lawsuit by Benitec.” Benitec Austl. Ltd. v. Nucleonics, Inc., No. 04-0174, slip op. at 6-8, 2005 WL 2415959 (D.Del. Sept. 29, 2005).
Nucleonics filed this appeal, arguing that Benitec’s statement was insufficient to eliminate declaratory jurisdiction. In an effort to defeat jurisdiction, Benitec expanded its representation, stating that its argument to the district court included — and was intended to include — a promise “not to sue Nucleonics for patent infringement arising from activities and/or products occurring on or before the date dismissal was entered in this action — September 29, 2005.” Appellee’s Br. 45. At oral argument, Benitec again purported to clarify its covenant. Benitec stated that it would not sue “for any research that was going on prior to the dismissal” or “for animal research that was done at the time of the dismissal.” Notably, Benitec offered no covenant with respect to future human or animal products or animal research.
The majority holds that Nucleonics has the burden of demonstrating a continuing case or controversy as narrowed by Beni-tec’s promises. Op. at 1344. It concludes that Nucleonics has not met this burden as to either its human application of RNAi or its animal application of RNAi. Op. at 1347, 1349. In my view, the majority applies an erroneous test.
III
The Supreme Court has clearly established that once declaratory jurisdiction has been established, the burden shifts to the party seeking to divest the court of jurisdiction to prove that there is no longer a current case or controversy. See Cardinal Chem., 508 U.S. at 98, 113 S.Ct. 1967. In Cardinal Chemical, we initially held that a finding of non-infringement moots a declaratory counterclaim for invalidity. Id. at 87, 113 S.Ct. 1967. The Supreme Court reversed finding that “it is perfectly clear that the District Court had jurisdiction to entertain Cardinal’s counterclaim” because “if ... a party has actually been charged with infringement of the patent, there is, necessarily, a case or controversy adequate to support jurisdiction of a complaint, or a counterclaim, under the Act.” Id. at 96, 113 S.Ct. 1967 (emphasis in original). The Court explained that while the initial burden of establishing declaratory judgment jurisdiction rests on the party seeking a declaratory judgment, “once that burden has been met courts are entitled to presume, absent further information, that jurisdiction continues.” Id. at 98, 113 S.Ct. 1967.
In explaining the policy reasons for shifting the burden, the Court stated that “[a] company once charged with infringement must remain concerned about the risk of similar charges if it develops and markets similar products in the future.” Id. at 99-100, 113 S.Ct. 1967. Moreover, declining jurisdiction over invalidity counterclaims “creates [the] potential for reliti-gation and imposes ongoing burdens on competitors who are convinced that a patent [is] invalid.” Id. at 101, 113 S.Ct. 1967; see also Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace and Agric. Implement Workers of Am., 523 U.S. 653, 660, 118 S.Ct. 1626, 140 L.Ed.2d 863 (1998) (“[T]he only question is whether the parties had any concrete dispute over the contract’s voidability *1353 at the time the suit was filed.” (emphasis added)). Nothing in the Supreme Court’s recent MedImmune decision, — U.S. -, 127 S.Ct. 764, 166 L.Ed.2d 604, suggests that the same test for determining whether a case or controversy exists applies throughout the lawsuit.
The majority distinguishes Cardinal Chemical as resting on the fact that at the time of the alleged mootness the case was on appeal after a judgment of non-infringement, but there is nothing in the Supreme Court’s decision that restricts its burden-shifting holding to that limited context. Op. at 1345. Contrary to the majority, Cardinal Chemical cannot be limited to mootness at the court of appeals level. If a case is not moot when the case is on appeal, it can hardly be moot in identical circumstances at the district court level. Our decisions holding that Cardinal Chemical does not compel a district court to decide an invalidity counterclaim after entering a judgment of non-infringement are best understood as recognizing district court discretion under the Declaratory Judgment Act.[4] Indeed, in repeatedly recognizing that a district court may decide the invalidity issue after a judgment of non-infringement, we have confirmed that such cases are not moot in the Article III sense of the term.
In any event, this is not a case in which the patentee suffered an adverse judgment, but rather one in which it voluntarily abandoned its infringement suit in the light of unfavorable developments. It is particularly inappropriate to place the burden of establishing continuing jurisdiction on declaratory plaintiffs where, as here, the claim of mootness is the result of the opposing party’s acts designed, at least in part, to defeat declaratory jurisdiction. “[T]here is an important public interest in protecting the legal system against manipulation by parties, especially those prone to involvement in repeat litigation, who might contrive to moot cases that otherwise would be likely to produce unfavorable precedents.” Hart and Wechsler, The Federal Courts and the Federal System 204 (5th ed.2003); see also Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha, 57 F.3d 1051, 1053 (Fed.Cir.1995) (“[O]ne who may become liable for infringement should not be subject to manipulation by a patentee who uses careful phrases in order to avoid explicit threats, thus denying recourse to the courts while damages accrue.”).
In the closely related injunction context, the Supreme Court has repeatedly held that the defendant carries a heavy burden of demonstrating that a case is moot when it voluntarily ceases the accused conduct. As the Supreme Court noted in Iron Arrow Honor Society v. Heckler, 464 U.S. 67, 72, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983), “[d]efendants face a heavy burden to establish mootness in such cases because otherwise they would simply be free to ‘return to [their] old ways’ after the threat of a lawsuit had passed.... Thus they must establish that ‘there is no reasonable likelihood that the wrong will be repeated.’ ” (quoting United States v. W.T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)); see also Public Serv. Co. of Colo. v. Shoshone-Bannock Tribes, 30 F.3d 1203, 1206 n. 3 (9th Cir.1994). Similarly in Friends of the Earth, *1354 Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000), the Supreme Court again concluded that “[t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.” (internal quotation marks omitted).[5] Cardinal Chemical confirms that the same rule governs in the declaratory context and requires a showing by the patentee that there is no reasonable likelihood that the controversy over the patent’s validity and enforceability will recur.
IV
In my view, the patentee here has not come close to meeting its burden to show that there will be no future controversy. Even if we were to assume that there is no longer any possible controversy concerning Nucleonics’s research on human drugs, there is a possibility that Nucleonics may in the future make human drugs that Beni-tec would challenge as infringing. Nu-cleonics has also stated that it intends to pursue animal research. While I agree with the majority that the future controversy would not satisfy the sufficient immediacy and reality test for the filing of a new suit today, Benitee has made no effort to demonstrate that the controversy between the parties will not recur. In fact, when asked at oral argument whether Benitee was “promising not to sue [Nu-cleonics] for animal product research that they begin” the day after argument, Beni-tee’s counsel responded, “We have not made that statement that we would forebear suing them.” Here Benitec’s success in defeating declaratory jurisdiction will have the effect of inhibiting Nucleonics’s ability to raise funds and conduct research and development. Nucleonics has stated that the threat of litigation has “hampered its efforts to obtain funding and to continue its business activities.” Appellant’s Br. 45 n. 19. Benitee has not satisfied its burden to eliminate any future controversy concerning infringement of the '099 patent.
V
The majority’s decision here is not only inconsistent with the Supreme Court precedent; it exposes an inconsistency in this court’s own jurisprudence. We have twice previously addressed the question of continuing declaratory jurisdiction in suits for infringement where the patent holder has attempted to defeat continuing jurisdiction by a covenant not to sue. See Fort James Corp. v. Solo Cup Co., 412 F.3d 1340 (Fed.Cir.2005); Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054 (Fed.Cir.1995). As the majority recognizes, op. at 1345-46, those cases rested on our now-rejected reasonable apprehension test, and may no longer be good law after MedImmune, 127 S.Ct. at 774 n. 11. But assuming that they are still good law, they in fact conflict with each other.
In Super Sack, 57 F.3d 1054, we held that a covenant not to sue defeated jurisdiction, though we noted that the accused infringer “never contended that it ha[d] taken meaningful preparatory steps toward an infringing activity by planning to make a new product that may later be said to infringe,” and that “[t]he residual possibility of a future infringement suit based on [the accused infringer’s] future acts is simply too speculative a basis for jurisdic *1355 tion over [the] counterclaim for declaratory judgments of invalidity.” Id. at 1059-60.[6] In Fort James, 412 F.3d 1340, even though the accused infringer did not prove a controversy that would satisfy the sufficient immediacy and reality test, we held the opposite — that a covenant not to sue for existing products did not render the declaratory claim moot, even though there was no evidence of a future controversy. Id. at 1348. While the majority here attempts to reconcile the two cases on the ground that the covenant in Super Sack came before a judgment of non-infringement, whereas in Fort James it came after a judgment of non-infringement, I fail to see why this should make any difference, nor did the dissent in Fort James itself. See id. at 1354 (Schall, J., dissenting).
VI
The effect of today’s decision is to limit the availability of declaratory jurisdiction to challenge invalid and unenforceable patents by allowing patentees to moot such controversies by dismissing the original infringement action and covenanting not to bring suit on existing products, without any showing that the controversy will not recur in the future. I respectfully dissent.

. The Advisory Committee Notes accompanying the 1937 adoption of Federal Rule of Civil Procedure 57 explain that
[t]he controversy must necessarily be of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts.... The existence or non-existence of any right, duty, power, liability, privilege, disability, or immunity or of any fact upon which such legal relations depend, or of a status, may be declared.
(internal quotation marks and citations omitted).

. Section 271(e)(1) provides:
It shall not be an act of infringement to make, use, offer to sell, or sell within the United States or import into the United States a patented invention (other than a new animal drug or veterinary biological product ... which is primarily manufactured using recombinant DNA, recombinant RNA, hybridoma technology, or other processes involving site specific genetic manipulation techniques) solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products.

. Nucleonics submitted the declaration of Robert J. Towarnicki, Nucleonics’s president and CEO, stating that:
Nucleonics wishes to expand its efforts beyond human health to animal husbandry and veterinary products. To this end, Nu-cleonics has entered into discussion with a large supplier of breeding stock for a variety of livestock food species regarding their needs and how RNA interference might be utilized to provide them a competitive advantage. These discussions began around May 25 of 2005; a meeting was held in Nashville on July 27. Nucleonics has executed a confidentiality agreement between the parties, which is a prerequisite to detailed technical discussions. Nucleonics *1352 expects work and research involving RNAi technology will commence shortly.
J.A. at 1412.

. See, e.g., Liquid Dynamics v. Vaughan Co., Inc., 355 F.3d 1361, 1371 (Fed.Cir.2004) ("A district court judge faced with an invalidity counterclaim challenging a patent that it concludes was not infringed may either hear the claim or dismiss it without prejudice, subject to review only for abuse of discretion.”); see also Cardinal Chemical, 508 U.S. at 95 n. 17, 113 S.Ct. 1967 ("[T]he Declaratory Judgment Act affords the district court some discretion in determining whether or not to exercise that jurisdiction, even when it has been established.”).

. See also Buckhannon Bd. & Care Home v. West Virginia Dep’t Health and Human Res., 532 U.S. 598, 609, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (stating that "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice” unless it is “absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur”).

. In Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 855 (Fed.Cir.1999), we applied the same test to a covenant not to sue filed after the commencement of a declaratory action where no infringement action had been commenced.